2007 UT 13

STATE of Utah, Plaintiff and Petitioner,

v.

Bill Frank SPILLERS, Defendant and Respondent.

No. 20050724.

Supreme Court of Utah.

Jan. 26, 2007.

Mark L. Shurtleff, Att'y Gen., Matthew D. Bates, Asst. Att'y Gen., Salt Lake City, for plaintiff.

Linda M. Jones, Salt Lake City, for defendant.

DURHAM, Chief Justice:

¶ 1 This case comes before us on a writ of certiorari. The State of Utah challenges the decision of the court of appeals to reverse the conviction of Billy Frank Spillers (Defendant) for first degree murder and to remand the case for a new trial. We affirm the court of appeals' holding that Defendant was entitled to jury instructions on both extreme emotional distress manslaughter and imperfect legal justification manslaughter.

**BACKGROUND**

¶ 2 During the afternoon of October 25, 1999, Defendant and James Jackson were at Defendant's home. Witnesses testified that an argument broke out between the two men, although Defendant testified that the argument was actually between Jackson and another man. Witnesses testified that, as the argument escalated, Defendant brandished a gun and ordered everyone to leave. Defendant admitted at trial that he told everyone to leave, but he denied threatening anyone with a firearm.

¶ 3 Shortly thereafter, Defendant and Jackson left Defendant's home. Defendant followed Jackson to Jackson's home, where they began arguing. The argument escalated, and Jackson accused Defendant of snitching on him to drug enforcement agents regarding a drug deal in Kansas City. Defendant testified that Jackson retrieved a gun from the living room couch, returned to the kitchen, and began threatening him, making Defendant feel nervous. Defendant then turned away from Jackson, at which point Jackson struck Defendant with the gun on the back of the head. Defendant testified that the blow left him feeling cloudy, dazed, uncomfortable, and scared. Defendant stated that, after being struck, he turned to face Jackson, pushed him backwards, and told him to back away. Then, according to Defendant, Jackson approached him with his arm cocked to strike again. At that point, Defendant pulled a gun from his waistband and shot Jackson in the chest. At trial, Defendant stated that he recalled shooting Jackson only once, although evidence revealed that Jackson was shot three times.

¶ 4 Two witnesses present in the house at the time of the shooting testified that they heard Defendant and Jackson arguing, followed by a series of gunshots. The witnesses differed about the timing of the three shots.

¶ 5 Defendant testified that after shooting Jackson, he took Jackson's gun, as well as his own, and ran out of the house, breaking his ankle during his flight and dropping both guns in the yard. He retrieved Jackson's gun and fled the scene. Defendant was apprehended later that evening. He was booked into the Salt Lake County jail and charged with first degree murder.

¶ 6 After his arrest, a forensic nurse examined Defendant and found a two-inch hematoma on the back of his head, consistent with Defendant's having received a wound the prior day. Additionally, she observed that Defendant's pupils appeared sluggish, which could have been the result of the blow to the head.

¶ 7 The medical examiner testified that Jackson was shot three times—once in the chest, once in the thigh, and once through the penis. The first shot was fatal and severed Jackson's spine, causing him to collapse immediately, while the second and third shots were fired as he lay on the floor. The

trajectory of the shots could be consistent with Defendant's story, although, according to the medical examiner, the position of Jackson's body indicated he may not have been moving forward to strike Defendant at the time of the first shot.

¶ 8 Several witnesses testified that Jackson had a reputation for violence, aggressive behavior, and an explosive temper.

¶ 9 The district court concluded that the evidence presented at trial did not warrant a jury instruction for either extreme emotional distress manslaughter or imperfect legal justification manslaughter, and Defendant was convicted of first degree murder pursuant to Utah Code section 76-5-203 (1999). Defendant appealed his conviction, and the court of appeals reversed, holding that Defendant was entitled to jury instructions for both extreme emotional distress manslaughter and imperfect legal justification manslaughter. We granted certiorari to determine (1) whether Defendant was entitled to a manslaughter jury instruction based on extreme emotional distress, and (2) whether Defendant was entitled to a manslaughter jury instruction based on imperfect legal justification. Jurisdiction is appropriate pursuant to Utah Code section 78-2-2(5) (2002).

## STANDARD OF REVIEW

¶ 10 "On certiorari, we review the court of appeals' decision for correctness, giving its conclusions of law no deference." *State v. Casey*, 2003 UT 55, ¶ 10, 82 P.3d 1106 (citations omitted). Whether a jury instruction on a lesser included offense is appropriate presents a question of law. *See State v. Hamilton*, 827 P.2d 232, 238 (Utah 1992). When considering whether a defendant is entitled to a lesser included offense jury instruction, we "view the evidence and the inferences that can be drawn from it in the light most favorable to the defense." *State v. Crick*, 675 P.2d 527, 539 (Utah 1983). In addition, when the defense requests a jury

instruction on a lesser included offense, the requirements for inclusion of the instruction "should be liberally construed." *State v. Hansen*, 734 P.2d 421, 424 (Utah 1986).

## ANALYSIS

¶ 11 The State argues that the court of appeals erred in reversing the trial court's decision not to instruct the jury on extreme emotional distress and imperfect legal justification manslaughter. The State argues that under no rational view of the evidence could a jury have both acquitted Defendant of murder and convicted him of manslaughter and that even if an instruction on lesser included offenses was warranted, that error was harmless. We disagree.

¶ 12 In *State v. Baker*, 671 P.2d 152 (Utah 1983), this court held that when the defense requests an instruction on a lesser included offense, the instruction "must be given if (i) the statutory elements of greater and lesser included offenses overlap ... and (ii) the evidence provides a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense." *State v. Hansen*, 734 P.2d 421, 424 (Utah 1986) (citations and internal quotation marks omitted) (discussing the *Baker* test for lesser included offense instructions); *see* Utah Code Ann. § 76-1-402(4) (2003). Thus, "when the evidence is ambiguous and therefore susceptible to alternative interpretations, and one alternative would permit acquittal of the greater offense and conviction of the lesser, a jury question exists and the court must give a lesser included offense instruction" when the defendant so requests it. *Baker*, 671 P.2d at 159.[1] Because neither party disputes the first prong of the lesser included offense test—that the statutory elements of manslaughter and murder overlap—the only issue before this court is whether there is a rational basis to acquit Defendant of murder and convict him of manslaughter.

---

1. The State argues that the *Baker* standard is inapplicable and that this court should consider Defendant's request for jury instructions under the test for affirmative defenses. However, the standards applied when a defendant is entitled to have the jury instructed on an affirmative defense or on a lesser included offense are indistinguishable. In either case, a defendant is entitled to an instruction "if there is any reasonable basis in the evidence." *State v. Torres*, 619 P.2d 694, 695 (Utah 1980); *accord Baker*, 671 P.2d at 159.

## I. DEFENDANT WAS ENTITLED TO A JURY INSTRUCTION FOR MANSLAUGHTER BASED ON EXTREME EMOTIONAL DISTRESS

¶ 13 Murder may be reduced to manslaughter where a defendant caused a person's death "under the influence of extreme emotional distress for which there is a reasonable explanation or excuse." Utah Code Ann. § 76–5–203(3)(a)(i); (3)(d) (1999). "[T]he reasonableness of an explanation or excuse ... shall be determined from the viewpoint of a reasonable person under the then existing circumstances." *Id.* § 76–5–203(3)(c).

¶ 14 A person suffers extreme emotional distress when exposed to " 'extremely unusual and overwhelming stress' such that the average reasonable person" would react by experiencing a loss of self-control. *State v. Shumway*, 2002 UT 124, ¶ 9, 63 P.3d 94 (quoting *State v. Bishop*, 753 P.2d 439, 471 (Utah 1988)). In such a situation, a person's reason would be overwhelmed by intense feelings, such as passion, anger, distress, grief, or excessive agitation. *Id.*

¶ 15 In *Shumway*, this court held that the defendant, a minor, was entitled to an extreme emotional distress manslaughter instruction when he stabbed his friend during a sleepover. *Id.* ¶¶ 2, 10–11, 13. The victim, upset with the defendant for beating him at video games, retrieved a knife and began lunging at the defendant. *Id.* ¶ 10. The defendant gained control over the knife and repeatedly stabbed the victim. *Id.* At trial, witnesses testified that the victim had a tendency towards aggression. *Id.* This evidence, when viewed in the light most favorable to the defense, offered a sufficient rational basis for a jury to conclude that the defendant was experiencing extreme emotional distress and to convict on the lesser included offense. *Id.* ¶ 13.

¶ 16 Like *Shumway*, evidence in this case could be interpreted to support Defendant's contention that he experienced extreme emotional distress and was therefore entitled to a manslaughter instruction. Defendant testified that he and Jackson were arguing prior to the altercation and that Jackson was upset with him, accusing him of snitching to drug enforcement officers. The tone of the conversation made Defendant nervous. Defendant stated that Jackson retrieved a firearm and struck Defendant on the back of the head. Defendant testified that the blow left him cloudy, dazed, uncomfortable, and scared. According to the nurse's testimony, the blow may have resulted in a two-inch hematoma that was present on Defendant's head the day after the shooting. Defendant testified that after being struck, he turned to face Jackson, who was cocking his arm back to strike Defendant again. At that point, Defendant shot Jackson three times, although at trial he testified that he remembered firing only a single shot. Further, witnesses testified that Jackson had a reputation for violence. Thus, a rational jury could, adopting Defendant's version of events, find that he was experiencing extreme emotional distress for which there was a reasonable explanation or excuse when he shot Jackson.

¶ 17 The State contends that unlike *Shumway*, in this case there was no rational basis in the evidence presented at trial to warrant the extreme emotional distress manslaughter instruction. Rather, the State maintains that a rational jury could not conclude that Defendant was overwhelmed such that a reasonable person would experience a loss of self-control. The substance of the State's argument is twofold.

¶ 18 First, the State's assertion rests on its own conclusion that Defendant acted "rationally" throughout the encounter; however, the question of whether Defendant acted "rationally" is a question of fact properly belonging to the jury. While a jury could adopt the State's version of events and convict Defendant of murder, a jury could also believe Defendant's interpretation of the evidence and conclude that he was not acting rationally, but rather was under extreme emotional distress as a result of Jackson's attack and convict on the lesser offense of manslaughter.

¶ 19 Second, the State contends that Defendant did not present evidence that he was in fact experiencing "extreme emotional distress." Rather, the State maintains that Defendant merely testified that he felt

nervous and that the blow to his head left him feeling cloudy, dazed, uncomfortable, and scared—terms not indicative, in the State's view, of extreme emotional distress. Contrary to the implications of the State's position, a defendant in a criminal case bears no burden of persuasion. *State v. Torres*, 619 P.2d 694, 695 (Utah 1980). "The ultimate burden of proving the defendant's guilt beyond a reasonable doubt remains on the state, whether defendant offers any evidence in an effort to prove affirmative defenses or not." *Id.; see also State v. Starks*, 627 P.2d 88, 92 (Utah 1981); *State v. Curtis*, 542 P.2d 744, 746 (Utah 1975); *People v. Tracy*, 1 Utah 343, 346 (Utah 1876). "It is sufficient . . . that the evidence or lack thereof creates a reasonable doubt as to any element of the crime." *Torres*, 619 P.2d at 695; *see also State v. Knoll*, 712 P.2d 211, 214 (Utah 1985); *State v. Wilson*, 565 P.2d 66, 68 (Utah 1977). A defendant is not required to testify at all, nor is he required to present any evidence at trial; he "may simply point to ambiguities or inconsistencies in the evidence presented by the State and require the State to prove every element of the offense beyond a reasonable doubt." *State v. Powell*, 2007 UT 9, 29, 154 P.3d 788. Accordingly, a defendant is not required to use particular language or key words in his testimony to identify his mental state as extreme emotional distress before a jury may consider that defense in a criminal trial. As long as the evidence presented at trial supports a defendant's theory of the crime and provides a rational basis for a verdict on the lesser included offense, a defendant is entitled to the jury instruction if he requests it.

¶ 20 Reviewing the evidence presented at trial in the light most favorable to the defense, we hold that there was evidence from which a jury reasonably could conclude that Defendant was under the influence of extreme emotional distress at the time of the shooting. A jury could infer Defendant's mental state from the testimony of Defendant and others that supported his theory of the case. This evidence includes Defendant's testimony that he felt nervous and that the

blow to his head left him feeling cloudy, dazed, uncomfortable, and scared. It also includes Defendant's rendition of the events that took place the night of the shooting, the testimony of the nurse regarding Defendant's wound, the medical examiner's testimony of the positioning of Jackson's body, the evidence of Jackson's reputation for violence, and any other evidence that substantiated Defendant's theory of the case. Based on the entirety of the evidence at trial, a jury could choose to believe Defendant's version of events and conclude that Defendant was experiencing extreme emotional distress at the time of the shooting for which there was a reasonable explanation or excuse.

## II. DEFENDANT WAS ENTITLED TO A JURY INSTRUCTION FOR IMPERFECT LEGAL JUSTIFICATION MANSLAUGHTER

¶ 21 The court of appeals found that the same evidence that supported Defendant's theory of extreme emotional distress manslaughter also supported his theory of imperfect legal justification manslaughter. *State v. Spillers*, 2005 UT App 283, ¶ 25, 116 P.3d 985. We agree.

¶ 22 Under Utah Code section 76–5–203, murder may be reduced to manslaughter when the defendant caused another's death "under a reasonable belief that the circumstances provided a legal justification or excuse for his conduct although the conduct was not legally justifiable or excusable under the existing circumstances." Utah Code Ann. § 76–5–203(3)(a)(ii), (3)(d) (1999). "[T]he reasonableness of an explanation or excuse . . . shall be determined from the viewpoint of a reasonable person under the then existing circumstances." *Id.* § 76–5–203(3)(c).

¶ 23 At trial, the court found the evidence sufficient to instruct the jury on perfect self-defense but not on imperfect legal justification manslaughter.[2] This was error. In *State v. Howell*, this court stated that for both perfect and imperfect self-defense, "the

---

**2.** At oral argument, the State conceded that Defendant was entitled to a perfect self-defense claim.

same basic facts [are] at issue." 649 P.2d 91, 95 (Utah 1982) (holding that the court in a murder trial properly gave a lesser included offense instruction on manslaughter over the defendant's objection). Although the State argues that the testimony at trial could be interpreted *only* as finding that Defendant was either guilty of murder or acquitted under a self-defense theory, we conclude that the evidence could also be interpreted by a jury that Defendant was entitled to defend himself against Jackson, but not entitled to use deadly force when Jackson only struck Defendant with his gun. Thus, as the court of appeals properly recognized, the conflicting interpretations of the evidence create a question of fact appropriately placed before a jury. *State v. Baker*, 671 P.2d 152, 159 (Utah 1983). Accordingly, we hold that Defendant was entitled to have the jury instructed on imperfect legal justification manslaughter.

## III. FAILING TO INSTRUCT THE JURY ON THE LESSER INCLUDED OFFENSES WAS NOT HARMLESS ERROR

¶ 24 Finally, the State argues that any error in the jury instructions was harmless. "[H]armless error is an error that is sufficiently inconsequential that there is no reasonable likelihood that it affected the outcome of the proceedings." *State v. Evans*, 2001 UT 22, ¶ 20, 20 P.3d 888. As recognized in *State v. Knight*, "when an element of the crime . . . is in dispute, and the evidence is consistent with both the defendant's and the State's theory of the case, failing to instruct on the lesser included offense presumptively affects the outcome of the trial . . . [and] our confidence in the verdict is undermined." 2003 UT App 354, ¶ 17, 79 P.3d 969. Clearly, the case at hand meets these criteria. Therefore, we find the State's arguments unpersuasive.

## CONCLUSION

¶ 25 We agree with the court of appeals that there was a sufficient rational basis in the evidence for the jury to acquit Defendant of murder and convict him of manslaughter. Accordingly, Defendant was entitled to jury instructions for both extreme emotional distress and imperfect legal justification manslaughter. We affirm the court of appeals and remand the case to the district court for a new trial.

¶ 26 Associate Chief Justice WILKINS, Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Chief Justice DURHAM's opinion.