2011 UT 21

**STATE of Utah, Plaintiff and Respondent,**

v.

**Brenda Christine WHITE, Defendant and Petitioner.**

**No. 20090322.**

Supreme Court of Utah.

April 19, 2011.

---

Mark L. Shurtleff, Att'y Gen., J. Frederic Voros, Jr., Laura B. Dupaix, Asst. Att'ys Gen., Salt Lake City, for plaintiff.

Richard G. Uday, Jason A. Schatz, Salt Lake City, for defendant.

Justice NEHRING, opinion of the Court:

## INTRODUCTION

¶ 1 Brenda White was charged with the attempted murder of her ex-husband, Jon White, after she chased and hit him with her car at Mr. White's workplace. Shortly after she was charged, Ms. White filed a pretrial motion asking the trial judge to instruct the jury on the extreme emotional distress defense. In her motion, Ms. White argued that the defense was warranted because, on the date of the incident, stress she felt from her divorce, along with financial difficulties and other emotional problems, overwhelmed her ability to act rationally and caused her to lose all self-control. The trial judge denied Ms. White's motion. The court of appeals affirmed. Because we conclude that the court of appeals applied the wrong standard when it evaluated the availability of the extreme emotional distress defense, we reverse the decision of the court of appeals with instructions to remand to the trial court to reevaluate evidence in support of the defense in a manner consistent with this opinion.

## BACKGROUND

¶ 2 Brenda and Jon White were married for eleven years. Both parties admit the marriage was difficult and that talk of divorce was common. According to Ms. White, Jon was addicted to pornography and suggested that Ms. White participate in "sexual threesomes" with him and his co-worker. Ms. White further alleges that during the marriage Jon was having an affair with another woman. These behaviors caused Ms. White to experience feelings of great anxiety, anger, and agitation, and they eventually led to the couple's divorce.

¶ 3 Following the divorce, Ms. White's stress increased. She struggled financially to support her two daughters and, as a result of having to work more hours, saw less of her children. Throughout this period of time, Ms. White claims that Jon began to withdraw from the children and failed to pay child support. Jon canceled Ms. White's medical insurance, which left her unable to pay for medication she needed to treat her anxiety and depression.

¶ 4 As part of the divorce settlement, Ms. White was awarded the couple's house. Because of her financial troubles, Ms. White attempted to refinance the home, but learned that she would not be able to complete the refinancing process without Jon's assistance and signatures.

¶ 5 On April 26, 2006, Brenda went to Jon's office to speak to him about refinancing the house. Jon spoke to the mortgage broker by phone, but told Brenda the issue would ultimately need to be resolved at a later time. Following the call, Jon walked out to the parking lot with Brenda. Brenda asked Jon to sign a quit-claim deed to the marital home, but Jon refused to do so until Brenda took his name off the two mortgages encumbering the property. The conversation escalated in intensity and Brenda became extremely upset. She climbed into her vehicle and turned on music with the lyrics, "I want to kill you; I want to blow you away." During the song, she joined her hands together to mimic a gun and pointed her fingers at Jon. She then told Jon he was a "parasite" and that she was going to wipe him off the earth. Jon went back into the office, and Brenda drove away.

¶ 6 That same afternoon, around 4:30 p.m., Ms. White returned to Jon's workplace to again discuss refinancing the home. When she arrived, Jon was leaving the office build-

ing. Brenda observed him talking on a cell phone—a cell phone that she claims Jon had repeatedly denied owning. Ms. White testified that at that moment she was overcome with all the anger, agitation, loss, grief, and disappointment she had experienced throughout her relationship and the divorce. Ms. White claims at that point, her emotions took over and she lost all self-control.

¶ 7 As she watched Jon talk on his cell phone, Ms. White drove her vehicle toward him, accelerating quickly. When Jon heard tires screeching, he jumped between two parked cars, over a small cement wall, and back into his office building. Ms. White continued to follow Jon, driving her car through the building's double glass doors. After entering the lobby with her car, Ms. White struck Jon twice with her vehicle. Jon flew over the hood of the car and landed on the ground, injuring his left leg.

¶ 8 Brenda was arrested and charged with attempted murder and criminal mischief. In preparation for trial, she filed a motion in limine requesting the court to instruct the jury on the defense of extreme emotional distress found in Utah Code section 76–5–203. In her motion, Ms. White argued that under this section she was entitled to let a jury consider whether during the relevant events Ms. White was acting "under the influence of extreme emotional distress" for which there was a "reasonable explanation or excuse."

¶ 9 The State opposed her motion. It proffered evidence from Mr. White's sister, who testified that Brenda called her shortly after the events and told her that she thought she had just killed Jon. Mr. White's sister testified that Brenda's tone was "matter-of-fact" and "unemotional." The State also introduced the statement of the officer who responded to the scene just after the events occurred. The officer testified that when he approached Ms. White, she was still in her car. He observed that she was not crying and did not appear upset.

¶ 10 After the trial court heard argument on the issue, it denied Ms. White's pretrial motion and declined to give the affirmative defense jury instruction. In its order, the trial court stated that "[t]he extreme emotional distress defense is available only to defendants who have been subjected to stress that would cause the average reasonable person to have an extreme emotional reaction and experience a loss of self control." The trial court concluded that while Ms. White may have been angry and under stress, the stressors she claimed caused her to attack her ex-husband were "common occurrences" for divorced couples and happened "several weeks to years" before the day of her violent attack. The trial court also found that Ms. White's return to Jon's workplace four hours after their argument, along with her negotiation of a "complicated driving pattern" indicated she "was aware of what she was doing and was in control of her faculties at the time in question."

¶ 11 Ms. White filed a petition for an interlocutory appeal to challenge the trial court's decision to deny her motion.

¶ 12 The court of appeals affirmed the trial court's decision.[1] The court of appeals reasoned that to be eligible for an extreme emotional distress defense instruction, a defendant must show that the "defendant's loss of self-control be in reaction to a *highly provocative triggering event*" that is "*contemporaneous* with the defendant's loss of self-control."[2] In its application of this rule to Ms. White's case, the court stated:

> Ultimately, the only contemporaneous, provocative event that preceded [Ms. White's] loss of self-control was [Jon's] use of a cell phone that he had previously denied possessing. This event is not sufficiently provocative, even when viewed in its unique context, to entitle [Ms. White] to a jury instruction on the affirmative defense of extreme emotional distress.[3]

¶ 13 The court of appeals reasoned that Ms. White "had the opportunity to proffer as much evidence as she deemed necessary to

1. *State v. White,* 2009 UT App 81, ¶ 1, 206 P.3d 646.

2. *Id.* ¶¶ 23–25 (emphases added).

3. *Id.* ¶ 28.

show that she qualified" for the defense, but the only information she actually proffered— "marital difficulties, financial stress, parenting issues, other difficulties with divorce, and the death of a therapist—lack[ed] the requisite contemporaneous relationship to her loss of self-control."[4] Finally, the court of appeals held that the availability of the extreme emotional distress defense must be evaluated using an objective standard and based on the expected conduct of a reasonable person under the then-existing circumstances, not the subjective point of view of Ms. White.[5] Ms. White filed a petition for certiorari, which we granted. We have jurisdiction under Utah Code section 78A–3–102(3)(a) (Supp.2010).

## STANDARD OF REVIEW

■ ¶ 14 On certiorari, we review the decision of the court of appeals for correctness, giving no deference to its conclusions of law.[6]

## ANALYSIS

■ ¶ 15 We granted certiorari to determine whether the court of appeals erred in holding that Ms. White was required to demonstrate a *highly provocative and contemporaneous triggering event* as a prerequisite to an affirmative defense of extreme emotional distress.

¶ 16 Ms. White contends the court of appeals erred when it required her to show a "highly provocative and contemporaneous triggering event" because this language does not appear in the statute and this standard is more demanding than the language of the statute and our case law requires.[7] Ms. White urges us to reverse the decision of the court of appeals and hold that she is entitled to let the jury consider this defense at trial.

¶ 17 The State asks us to affirm the decision of the court of appeals. The State con-

cedes, as it must, that the extreme emotional distress defense statute does not contain the "highly provocative and contemporaneous triggering event" language, but it nevertheless argues that case law interpreting the extreme emotional distress defense statute clearly requires application of this rigorous standard.

¶ 18 We do not decide whether Ms. White is entitled to an extreme emotional distress defense jury instruction at trial because this is not the question presented to us. But we do conclude that the court of appeals' decision imposes a standard more exacting than the statute mandates. We therefore reverse the decision of the court of appeals and remand with instructions to remand this matter to the trial court for reevaluation of the evidence supporting Ms. White's request for an extreme emotional distress defense instruction under the standard we announce in this opinion.

¶ 19 We begin by discussing the circumstances in which a defendant is entitled to an affirmative defense jury instruction. We then review the requirements of the extreme emotional distress defense and compare those requirements with the standard the court of appeals applied. Finally, we briefly provide further guidance to the trial court on remand.

I. WHEN A DEFENDANT REQUESTS A JURY INSTRUCTION ON AN AFFIRMATIVE DEFENSE, THE COURT IS OBLIGATED TO GIVE IT IF THE EVIDENCE PRESENTED PROVIDES ANY REASONABLE BASIS FOR A JURY TO CONCLUDE THAT THE DEFENSE APPLIES TO THE DEFENDANT

¶ 20 At the time of the relevant events, extreme emotional distress was an affirma-

4. *Id.*

5. *Id.* ¶¶ 18–20.

6. *State v. Casey*, 2003 UT 55, ¶ 10, 82 P.3d 1106.

7. Ms. White also claims we should reverse the court of appeals for other reasons. First, Ms. White claims that the court of appeals erred when it improperly relied on cases predating a change in the statutory language from requiring a defendant to demonstrate an extreme emotion-

al "disturbance" to requiring the defendant to show extreme emotional "distress." Second, she argues the court of appeals erred by not taking into account the pretrial nature of her request for an extreme emotional distress defense instruction, but rather evaluated it under a post-trial standard. Because we reverse the decision of the court of appeals on other grounds, we find it unnecessary to specifically address these additional claims of error.

tive defense to murder under Utah law.[8] Under the statutory language, the defendant's presentation of a successful extreme emotional distress defense reduces murder to manslaughter, or attempted murder to attempted manslaughter.[9]

¶ 21 The fact that the Legislature chose to codify extreme emotional distress as an affirmative defense is significant. As we have stated before:

> When a criminal defendant requests a jury instruction regarding a particular affirmative defense, the court is *obligated* to give the instruction if evidence has been presented—either by the prosecution or by the defendant—that provides *any reasonable basis* upon which a jury could conclude that the affirmative defense applies to the defendant.[10]

¶ 22 Although the defendant's burden to demonstrate that the factual record supports an affirmative defense instruction is relatively low, the defense is not available to all who seek it. A trial court may not give an extreme emotional distress defense instruction unless it concludes that a rational jury could find a factual basis in the evidence

to support the defense.[11] This is particularly true in the case of extreme emotional distress. The New York Supreme Court skillfully described a defendant's eligibility for the defense in this way:

> As with most cases where this defense may be properly asserted, the issue presented is a very close one since all intentional homicides, with the exception of those by cold-blooded killers or in the course of a felony, are abnormal acts for the perpetrators and the result of strong emotions and stresses. Consequently, a distinction must be drawn so that this defense will only be applicable to those homicides which appropriately qualify under the underlying purpose of this mitigating defense and not *en masse* to all acts constituting murder, in the second degree.[12]

¶ 23 This explanation should guide the evaluative process of extreme emotional distress claims in our courts. Having generally discussed the applicable standard for granting a defendant's request for an affirmative defense, we now turn specifically to the question of what the factual record must show in order for a rational jury to conclude that a

---

8. *See* Utah Code Ann. § 76–5–203(4)(a)(i) (2008) ("It is an affirmative defense to a charge of ... attempted murder that the defendant caused the death of another or attempted to cause the death of another ... under the influence of extreme emotional distress for which there is a reasonable explanation or excuse."); *State v. Low*, 2008 UT 58, ¶ 22, 192 P.3d 867 (noting that in 1999, the Legislature removed the extreme emotional distress defense from Utah's manslaughter statute and inserted it into the murder statute as an affirmative defense).

In 2009, the Legislature removed the extreme emotional distress defense from the murder statute and inserted it into the special mitigation statute. *See* Utah Code Ann. § 76–5–205.5(1)(b) (Supp.2009) ("Special mitigation exists when the actor causes the death of another or attempts to cause the death of another ... under the influence of extreme emotional distress for which there is a reasonable explanation or excuse."). Thus, the extreme emotional distress defense is no longer an affirmative defense. *See State v. Drej*, 2010 UT 35, ¶ 19, 233 P.3d 476 ("The plain language of section 76–5–205.5 leaves no doubt that the [L]egislature did not intend to enact special mitigation as an affirmative defense.... [S]pecial mitigation is found in its own statutory section rather than included with the affirmative defenses to murder found in section 76–5–203."). But because "extreme emotional distress" was

an affirmative defense at the time of the relevant events, we refer to this former version of the statute throughout this opinion.

9. *Low*, 2008 UT 58, ¶ 22, 192 P.3d 867.

10. *Id.* ¶ 25 (emphases added); *see also State v. Padilla*, 776 P.2d 1329, 1330 (Utah 1989) ("[I]nstead of incorporating the heat of passion standard into the definition of 'manslaughter,' the present Criminal Code redefined and enlarged the standard to include any extreme emotional disturbance based on a reasonable excuse or explanation that mitigates the blameworthiness of the homicide."); *State v. Standiford*, 769 P.2d 254, 259 (Utah 1988) (same); *State v. Torres*, 619 P.2d 694, 695 (Utah 1980) (stating that a defendant is *"entitled* to have the jury instructed on the law applicable to [her] theory of the case if there is *any reasonable basis* in the evidence to justify it" (emphases added)).

11. *See Low*, 2008 UT 58, ¶¶ 26–29, 37, 192 P.3d 867; *State v. Spillers*, 2007 UT 13, ¶ 19, 152 P.3d 315.

12. *People v. Shelton*, 88 Misc.2d 136, 385 N.Y.S.2d 708, 710 (N.Y.Sup.Ct.1976) (commenting on the extreme emotional distress affirmative defense under New York state law).

defendant could have been acting "under the influence of extreme emotional distress."

## II. A DEFENDANT IS ENTITLED TO AN EXTREME EMOTIONAL DISTRESS DEFENSE INSTRUCTION WHEN THE TRIAL COURT DETERMINES THAT A RATIONAL JURY EVALUATING THE EVIDENCE COULD CONCLUDE THAT THE DEFENDANT WAS EXPOSED TO "EXTREMELY UNUSUAL AND OVERWHELMING STRESS" FOR WHICH THERE IS "A REASONABLE EXPLANATION OR EXCUSE"

¶ 24 We begin our discussion by turning to the language of the extreme emotional distress defense statute. Utah Code section 76–5–203(4)(a)(i) provides that "[i]t is an affirmative defense to a charge of . . . attempted murder" if the defendant was [1] acting "under the influence of extreme emotional distress [2] for which there was a reasonable explanation or excuse." [13] Although the statute does not define these terms, the extreme emotional distress defense has a long history in our case law in which we have conferred meaning for each of the elements. We find it useful to briefly discuss this history here.

■ ¶ 25 Utah's extreme emotional distress defense was codified in 1973 and was largely patterned after the defense contained in the Model Penal Code.[14] The extreme emotional distress defense was generally enacted by states in response to the unwork-able nature of the heat of passion defense.[15] The defense was meant to "substantially *enlarge[ ]* the class of cases that might be reduced to manslaughter" and "to do away with categories of adequate provocation which had developed in the cases." [16]

■ ¶ 26 Although we briefly touched on the extreme emotional distress defense in two earlier cases, we did not have an opportunity to squarely consider the contours of the defense until we decided *State v. Bishop* in 1988.[17] In *Bishop,* we singled out a New York case, *People v. Shelton,*[18] as a "well-reasoned" decision that helped define what "extreme emotional disturbance" [19] would mean under our statute.[20] Relying on *Shelton,* we adopted a similar definition for extreme emotional distress under Utah law. We stated that a person acts under the influence of extreme emotional distress when "he is exposed to extremely unusual and overwhelming stress" that would cause the average reasonable person under the same circumstances to "experience a loss of self-control," and "be overborne by intense feelings, such as passion, anger, distress, grief, excessive agitation, or other similar emotions." [21]

¶ 27 Although the court of appeals' decision correctly identifies the definition of extreme emotional distress,[22] the court of appeals erred in applying it to Ms. White's case because it linked this definition to an additional requirement not present in the statute

13. Utah Code Ann. § 76–5–203(4)(a)(i) (2008).

14. *See State v. Bishop,* 753 P.2d 439, 469–70 (Utah 1988), *overruled on other grounds by State v. Menzies,* 889 P.2d 393 (Utah 1994).

15. *See id.*

16. *Id.* (emphasis added).

17. *Compare id., with State v. Russell,* 733 P.2d 162, 169 (Utah 1987), *and State v. Cloud,* 722 P.2d 750, 753–54 (Utah 1986).

18. 88 Misc.2d 136, 385 N.Y.S.2d 708 (N.Y.Sup. Ct.1976).

19. When this defense was originally codified, it was entitled "extreme emotional disturbance" rather than "extreme emotional distress." Ms. White argues that the Legislature's decision to change the word "disturbance" to "distress" is significant. As we noted above, we find it unnecessary to delve into the substance of this claim. Regardless of whether the change was significant, we find the "disturbance" cases helpful in understanding the history and evolution of the extreme emotional distress defense and reference these cases for that purpose.

20. *See Bishop,* 753 P.2d at 471.

21. *Id.* (emphasis omitted); *see also State v. Spillers,* 2007 UT 13, ¶ 14, 152 P.3d 315; *State v. Piansiaksone,* 954 P.2d 861, 871 (Utah 1998) (requiring stress to have an "overwhelm[ing]" or "unusual impact" that results in the defendant's loss of self-control).

22. *See State v. White,* 2009 UT App 81 ¶ 21, 206 P.3d 646.

or our case law.[23] Specifically, the court of appeals stated:

> Although [Ms. White] had the opportunity to proffer as much evidence as she deemed necessary to show that she qualified for [the extreme emotional distress defense], the only other factors actually proffered—marital difficulties, financial stress, parenting issues, other difficulties with divorce, and the death of a therapist—*lack the requisite contemporaneous relationship to her loss of self-control.*[24]

¶ 28 As we discuss in more detail below, this "contemporaneous" requirement is not a prerequisite to asserting the defense and the court of appeals' imposition of this standard was an improper retreat into our heat of passion jurisprudence.

¶ 29 We first conclude that the court of appeals improperly relied on *State v. Clayton.*[25] *Clayton* was decided in 1983, before we developed the requirements of the extreme emotional distress defense in *Bishop.* In *Bishop,* we announced our intent to distance ourselves from the heat of passion analysis and to "substantially enlarge[ ] the class of cases" where the defense would be available to defendants.[26] Since our decision in *Bishop,* we have employed a more generous approach to this defense and the court of appeals erred in narrowing its scope.[27]

■ ¶ 30 Second, we conclude that the court of appeals erred by requiring Ms. White to show a "highly provocative triggering event" that was "contemporaneous" with her loss of self-control.[28] The word "contemporaneous" does not appear anywhere in the statute or our extreme emotional distress defense case law. And unlike the former "heat of passion" defense, "[a]n action influenced by an extreme emotional [distress]" need not be an immediate trigger for criminal conduct.[29] "Rather, it may be that a significant mental trauma has affected a defendant's mind for a substantial period of time, simmering in the unknowing subconscious and then inexplicably coming to the fore."[30] Our recent decision in *State v. Shumway*[31] illustrates this principle. In *Shumway,* two teenage boys, Christopher and Brookes, were playing video games at a sleepover.[32] According to Brookes, Christopher was irritated with Brookes for beating him at the games, went into the kitchen, and began playing with a knife.[33] Christopher began throwing the knife in the air and catching it, and then lunged at Brookes and began poking him with the knife.[34] The boys wrestled over control of the knife and in his anger, Brookes stabbed Christopher, killing him.[35] We held that Brookes was entitled to an extreme emotional distress defense instruction. In our decision, we noted that Brookes had "been bullied and pushed

23. Although we conclude that the court of appeals was correct in its articulation of this definition, *see State v. Spillers,* 2007 UT 13, ¶ 14, 152 P.3d 315, because the court of appeals' analysis was linked to an improper standard, we decline to comment on its determination that Ms. White's stressors do not rise to the level of the "extremely unusual and overwhelming stress" required to obtain the defense. Instead, we leave the question of whether Ms. White was exposed to "extremely unusual and overwhelming stress" open for reevaluation by the trial court in accordance with our opinion.

24. *White,* 2009 UT App 81, ¶ 28, 206 P.3d 646 (emphasis added).

25. *See id.* ¶ 25 (citing *State v. Clayton,* 658 P.2d 624 (Utah 1983)).

26. *Bishop,* 753 P.2d at 469.

27. *Compare, e.g., Clayton,* 658 P.2d at 626 (focusing primarily on the *passage of time* between the provocative fight that led defendant to kill and

the killing itself), *with State v. Shumway,* 2002 UT 124, ¶ 10, 63 P.3d 94 (taking into account a number of considerations including defendant's history of being bullied as a child in the determination of whether defendant was acting under extreme emotional distress).

28. *White,* 2009 UT App 81, ¶¶ 23, 25, 206 P.3d 646.

29. *Shelton,* 385 N.Y.S.2d at 715.

30. *Id.*

31. 2002 UT 124, 63 P.3d 94.

32. *Id.* ¶ 2.

33. *Id.* ¶ 10.

34. *Id.*

35. *Id.*

around by his peers since he was in the third grade, and that all of this 'came out on Chris' when the boys fought over the knife." [36]

¶ 31 This case demonstrates that when a person reacts to a situation, that reaction cannot be viewed in isolation. Rather, a reaction to an event must be evaluated in its broader context. This context is relevant, maybe essential, to acquiring an accurate picture of the past experiences and emotions that give meaning to that reaction. Those past experiences must be taken into account to determine whether an individual is acting "under the influence of extreme emotional distress."

¶ 32 Although a building emotional reaction to a series of events may *contribute* to extreme emotional distress, an external triggering event is also required.[37] An external trigger is a necessary predicate to access the defense because other preeminent causes of emotional distress—organic causes relating to mental illness and self-inflicted causes—are expressly rejected as a form of distress under the statute.[38] Thus, "some external initiating circumstance must bring about" the defendant's distress and resulting conduct.[39] In many cases this triggering event will naturally occur just before the criminal act; however, we find no language in our precedent that *requires* the triggering event be *contemporaneous* with the defendant's loss of self-control. A close temporal tie between provocation and the criminal act was necessary under the "heat of passion" formulation because manslaughter was not available if there was time for the defendant to "cool off." No such requirement exists to assert the extreme emotional distress defense.

¶ 33 In summary, the court of appeals' "contemporaneous" requirement represents, in our view, an improper retreat into the realm of "heat of passion" manslaughter. As we discussed above, the extreme emotional distress defense was meant to "reformulate[ ] and *enlarge[ ]* the heat of passion standard" to make it more accessible to criminal defendants and to move away from a case-by-case examination of whether the "type" of provocation rendered the defendant's reaction reasonable. Thus, we conclude that the court of appeals erred by improperly limiting the extreme emotional distress defense to defendants who can point to a "highly provocative" and "contemporaneous" triggering event.[40] This is not what the law requires. We therefore reverse and remand this case to the court of appeals with instructions to remand the case to the trial court. On remand, we instruct the trial court to use this opinion as a guide to reevaluate whether Ms. White has demonstrated "any reasonable basis" upon which the jury should be allowed to consider the extreme emotional distress defense at trial.

## III. THE COURT OF APPEALS CORRECTLY DETERMINED THAT THE "REASONABLE EXPLANATION OR EXCUSE" FOR THE DISTRESS MUST BE EVALUATED FROM THE VIEWPOINT OF A REASONABLE PERSON UNDER THE THEN-EXISTING CIRCUMSTANCES

¶ 34 We now take the opportunity to briefly comment on the "reasonable explanation or excuse" element of the extreme emotional distress defense statute. While technically outside the scope of the narrow certiorari question presented to us, we nevertheless address this issue in order to provide guidance to the trial court on remand.[41]

36.  *Id.*

37.  *See Bishop*, 753 P.2d at 472; *White*, 2009 UT App 81, ¶ 21, 206 P.3d 646.

38.  *See* Utah Code Ann. § 76–5–203(4)(b) ("[E]motional distress does not include: (i) a condition resulting from mental illness as defined in [s]ection 76–2–305; or (ii) distress that is substantially caused by the defendant's own conduct.").

39.  *Bishop*, 753 P.2d at 472.

40.  *White*, 2009 UT App 81, ¶¶ 23–25, 206 P.3d 646.

41.  *See, e.g., State v. Jeffs*, 2010 UT 49, ¶ 39, 243 P.3d 1250 (addressing a non-dispositive issue "in order to guide the trial court on remand."); *IHC Health Servs., Inc. v. D & K Mgmt.*, 2003 UT 5, ¶ 10, 73 P.3d 320 (considering an argument to guide the parties on remand).

¶ 35 On appeal, Ms. White argues that the court of appeals erred when it failed to evaluate the reasonableness of the explanation for her distress from her subjective point of view. We disagree.

¶ 36 The extreme emotional distress statute provides that "[t]he reasonableness of an explanation or excuse ... shall be determined from the viewpoint of a *reasonable person under the then existing circumstances.*" [42] As the court of appeals noted:

> Although a trial court is statutorily required to consider the circumstances surrounding a defendant's extreme emotional distress, those circumstances must be viewed from the viewpoint of a reasonable person. Thus, the legal standard is whether the circumstances were "such that the average reasonable person would react by experiencing a loss of self-control." [43]

■ ¶ 37 This standard requires a trier of fact to put herself in the shoes of a reasonable person in the defendant's situation to determine whether the defendant's reaction to a series of events was reasonable. The standard is not whether the defendant thought her reaction was reasonable, but whether a reasonable person facing the same situation would have reacted in a similar way. We conclude that the court of appeals correctly identified this legal standard. This same standard should be applied when the trial court evaluates Ms. White's extreme emotional distress defense on remand.

## CONCLUSION

¶ 38 We conclude that the court of appeals erred when it required Ms. White to demonstrate a "highly provocative" and "contemporaneous" triggering event to obtain a jury instruction on the extreme emotional distress defense. This standard imposes too high of a burden on defendants to assert this affirmative defense and is an improper retreat into our rejected heat of passion jurisprudence. Although we conclude that the court of appeals improperly applied a more demanding standard to determine whether Ms. White

was acting under the influence of extreme emotional distress, we conclude the court of appeals properly concluded that Ms. White's defense should be evaluated from the perspective of a reasonable person under the then-existing circumstances. We therefore remand this case to the court of appeals with instructions to remand to the trial court to reevaluate whether to allow Ms. White's proposed extreme emotional distress affirmative defense instruction at trial.

¶ 39 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice PARRISH, and Judge MORTENSEN concur in Justice NEHRING's opinion.

¶ 40 Due to his retirement, Justice WILKINS did not participate herein. District Court Judge MORTENSEN sat.

¶ 41 Justice THOMAS R. LEE became a member of the Court on July 19, 2010, after oral argument in this matter, and accordingly did not participate.

---

42. UTAH CODE ANN § 76–5–203(4)(c) (2008) (emphasis added).

43. *State v. White*, 2009 UT App 81, ¶ 20, 206 P.3d 646 (quoting *State v. Spillers*, 2007 UT 13, ¶ 14, 152 P.3d 315).