CHIEF JUSTICE DURRANT, dissenting:
¶ 55 I respectfully dissent from the majority's conclusion that the jury instructions in this case were legally sufficient. Even when examined "in their entirety," they failed to accurately "instruct the jury on the law applicable to the case."[1] Specifically, jury instruction 19 introduced an ambiguity that *130 was not remedied by later instructions or by closing arguments.
¶ 56 A criminal defendant "is entitled to have the jury instructed fully and clearly on the law" that supports his theory of the case.[2] And while we have held that a misleading or erroneous jury instruction is harmless if "we are not convinced that without this instruction the jury would have reached a different result,"[3] that is not the case here. The ambiguity in jury instruction 19 "create[d] a reasonable likelihood that the jurors were misled or confused as to the correct legal standard,"[4] even when the jury instructions are read as a whole. The defendant confessed to killing the victim. The only issue for the jury to decide was whether special mitigation applied. Jury instruction 19, explaining the special mitigation of extreme emotional distress, went to the very heart of the defendant's theory of the case. Without a full and clear statement of the law of special mitigation by extreme emotional distress, there is an obvious risk that the jury reached its verdict based on a misunderstanding of the law.
¶ 57 Jury instruction 19 stated as follows:
Criminal homicide constitutes manslaughter if the defendant commits murder, but Special Mitigation is established. Special Mitigation generally involves a factor or set of factors that make a person less blameworthy for a criminal act. Special Mitigation exist[s] when a person causes the death of another under the influence of extreme emotional distress for which there was a reasonable explanation or excuse. In this case, the defendant asserts that Special Mitigation exists because he caused the death of another under the influence of extreme emotional distress for which there was a reasonable explanation or excuse.
A person acts under the influence of extreme emotional distress when he is exposed to extremely unusual and overwhelming stress that would cause the average reasonable person in similar circumstances to experience a loss of self-control and be overborne by intense feelings such as passion, anger, distress, grief, excessive agitation, or other like emotions. The standard is not whether the defendant subjectively thought his reaction was reasonable. Rather, it is an objective standard, determined from the viewpoint of a reasonable person faced with the then-existing circumstances.
(Emphasis added.) The first paragraph of instruction 19 accurately depicts the law. It tracks the special mitigation statute, which provides that in order for special mitigation to apply, the actor must "cause[ ] the death of another ... under the influence of extreme emotional distress for which there is a reasonable explanation or excuse."[5]
¶ 58 The second paragraph also begins with an accurate statement of the law, employing the definition of extreme emotion distress this court adopted in State v. Bishop .[6] But the final two sentences introduce a significant ambiguity. After setting forth our Bishop definition ("[a] person acts under the influence of extreme emotional distress when he is exposed to extremely unusual and overwhelming stress that would cause the average reasonable person in similar circumstances to experience a loss of self-control and be overborne by intense feelings"), the instruction goes on to state that "[t]he standard is not whether the defendant subjectively thought his reaction was reasonable.
*131 Rather, it is an objective standard, determined from the viewpoint of a reasonable person faced with the then-existing circumstances." (Emphasis added). The jury is left to answer the question of what the relevant reaction was. Because this instruction did not fully and clearly define what is meant by reaction , the jury could conclude that the reaction was not the loss of self-control, but the act of killing.
¶ 59 The majority reasons that although "the instruction does not explicitly state that the reaction referred to is the emotional reaction and loss of self-control," the meaning of reaction "seems quite clear" because "only emotional reactions and loss of self-control are referenced in the entire paragraph in question."[7] But the meaning of reaction is anything but clear. In fact, the "usual and ordinary meanings" of reaction -which the jury was instructed to employ[8] -include "a response to some treatment, situation, or stimulus" and a "bodily response to or activity aroused by stimulus."[9] So it is certainly possible, and perhaps even likely, that a juror would understand reaction to mean not the loss of self-control, but the killing itself.
¶ 60 This ambiguity is accentuated by its placement relative to the definition of extreme emotional distress. The majority states that "[t]he sentence referencing the defendant's 'reaction' is clearly tied to the preceding sentence,"[10] but there is no transition or other language that clearly ties these sentences together. There is no reference in either sentence that would indicate that reaction is the defendant's loss of self-control. The reference to his reaction follows the definition of extreme emotional distress. The progression of the events listed in the paragraph-from extreme emotional distress to the loss of self-control to the reaction-suggests that the reaction referred to is the culmination of that sequence of events, which was the murder. So a juror could easily interpret his reaction to refer to the defendant's reaction to the extreme emotional distress-specifically, the act of killing his wife.
¶ 61 The majority argues that instruction 19 is not ambiguous, but it still attempts to shore up the meaning of reaction by pointing to another jury instruction, instruction 21, and to defense counsel's closing argument. Neither instruction 21 nor the closing arguments was sufficient to cure instruction 19's ambiguity.
¶ 62 Jury instruction 21 explained, "In examining the reasonableness of the explanation or excuse offered by the defendant you should consider all the then-existing circumstances. 'Then-existing circumstances' include more than just the triggering event. The phrase refers to the broader context of past experiences and emotions that give meaning to the defendant's reaction, that is to say, to the defendant's loss of self-control." The majority concludes that "this instruction clarifies" that "the reaction that the jury must conclude was reasonable ... is the loss of self-control, not the killing."[11] But instruction 21 is explicitly addressed to "the reasonableness of the explanation or excuse ," not the reasonableness of the reaction . (Emphasis added). So the jurors were left on their own to connect the reaction in instruction 21 with the reaction in instruction 19. Moreover, there is nothing in either instruction that would alert the jury that the reaction referred to in instruction 21 was the same reaction referred to in instruction 19. As the majority states, "[j]ury instructions explaining the 'reasonable explanation or excuse' requirement should avoid ambiguity as to what the reasonable explanation is addressing. If one instruction strongly implies the killing must be reasonable, this additional jury instruction may not be sufficient to remedy the misstatement."[12] Instruction 21 falls *132 well short of clarifying the ambiguity in instruction 19.
¶ 63 Finally, the majority reasons that defense counsel's closing argument was sufficient to clarify instruction 19. It is true that defense counsel correctly stated the law, but she did so without using the ambiguous term reaction. And I find it troubling to conclude that defense counsel's closing argument could cure an ambiguous instruction where jurors were specifically instructed to rely on the jury instructions and not the closing arguments for statements of law.[13]
¶ 64 Moreover, even accepting the proposition that closing arguments could clarify an ambiguous jury instruction as a general matter, they did not do so in this case. Here, while the jury did hear a correct description of the law by defense counsel, it also heard an incorrect description by the prosecutor in his rebuttal. There, the prosecutor conflated the loss of control with the killing. He first referenced "a complete loss of control that results in stabbing [one's] spouse and beating them." He then defined the loss of control in this case as "the stabbing and the beating." So the last statement of the law the jury heard before it deliberated was a conflation of the loss of self-control and the killing, which emphasized the ambiguous use of his reaction in instruction 19. The majority provides no explanation for why the jury would have relied upon defense counsel's closing argument, while disregarding the prosecutor's rebuttal.
¶ 65 The majority states that "[e]ven if ... instruction 19 is ambiguous, something more than a possibility that a jury could be confused by an instruction is required to grant a new trial."[14] The majority sets a dangerously high standard. While it is true that "almost any set of jury instructions" will contain some ambiguity, an ambiguous jury instruction that significantly distorts a legal standard is on par with a jury instruction that "completely misstates a legal standard."[15] And that is what we have here. Instruction 19 did not "simply [leave] out a specific reference to the 'reaction' it was referencing," as the majority states.[16] It all but invited an incorrect application of the law by the jury-that it must find the killing itself reasonable and not simply the loss of self-control.
¶ 66 The majority correctly observes that "the distinction between a reasonable loss of self-control and a reasonable murder is not easily made."[17] While this distinction is not easily made, it must be clearly made because for a defendant to prove that a murder was reasonable is an altogether different task than proving that a loss of control was reasonable. The majority agrees with this, highlighting the important difference between the loss of self-control and murder. After rejecting the State's argument that the killing itself must be reasonable, the majority concludes that "it is hard to imagine that the average reasonable person would ever kill someone.... Indeed, once the average reasonable person in the then existing circumstances loses self-control, the person no longer acts reasonably."[18] To require proof that a murder was reasonable would effectively eliminate the defense of special mitigation by extreme emotional distress. Indeed, it seems highly unlikely that any jury would ever conclude that a murder was reasonable.
¶ 67 Yet, instruction 19's ambiguous reference to his reaction created a very real possibility that the jury believed its charge was to determine whether the murder was reasonable. The defendant was entitled to a clear instruction on special mitigation by extreme emotional distress-in fact, he proposed one that was rejected by the court. This instruction went to the heart of his *133 theory of the case. Even though he committed a horrific act, he is nevertheless entitled to a fair trial, which includes a clear instruction on this key element of his defense. Because a clear instruction was lacking here, I would reverse.

State v. Maestas , 2012 UT 46, ¶ 148, 299 P.3d 892 (citation omitted).

State v. Castillo , 23 Utah 2d 70, 457 P.2d 618, 620 (1969) (emphasis added); see also State v. Harding , 635 P.2d 33, 34 (Utah 1981) (extending Castillo 's analysis of jury instructions on the theory of self-defense to other defense theories).

Green v. Louder , 2001 UT 62, ¶ 17, 29 P.3d 638.

Supra ¶47.

Utah Code § 76-5-205.5(1).

753 P.2d 439 (Utah 1988), overruled on other grounds by State v. Menzies , 889 P.2d 393 (Utah 1994). "In Bishop , ... [w]e stated that a person acts under the influence of extreme emotional distress when 'he is exposed to extremely unusual and overwhelming stress' that would cause the average reasonable person under the same circumstances to 'experience a loss of self-control,' and 'be overborne by intense feelings, such as passion, anger, distress, grief, excessive agitation, or other similar emotions.' " State v. White , 2011 UT 21, ¶ 26, 251 P.3d 820 (quoting Bishop , 753 P.2d at 471 ).

Supra ¶44.

Jury instruction 14 stated, "Unless these instructions give a definition, you should give all words their usual and ordinary meanings." Jury instructions 29 and 30 defined terms relevant to the case, but did not define reaction .

Reaction, Merriam-webster Online , https://www.merriamwebster.com/dictionary/reaction (last visited July 20, 2017).

Supra ¶44.

Supra ¶45.

Supra ¶52.

Instruction 3 read, "When the lawyers give their closing arguments, keep in mind that they are advocating their views of the case. What they say during their closing arguments is not evidence. If the lawyers say anything about the evidence that conflicts with what you remember, you are to rely on your memory of the evidence. If they say anything about the law that conflicts with these instructions, you are to rely on these instructions."

Supra ¶46.

Supra ¶47.

Supra ¶47.

Supra ¶49.

Supra ¶35.