Argued February 7, affirmed March 12, 1969

STATE OF OREGON, *Respondent, v.*
MICHAEL JOSEPH, *Appellant.*

451 P. 2d 468

*David R. Vandenberg, Jr.*, Klamath Falls, argued the cause for appellant. With him on the briefs was Donald R. Crane, Klamath Falls.

*Delos B. Parks*, Special Deputy District Attorney, Klamath Falls, argued the cause for respondent. On the brief were Sam A. McKeen, District Attorney and James A. Sanderson, Deputy District Attorney, Klamath Falls.

Before PERRY, Chief Justice, and SLOAN, GOODWIN, HOLMAN and HAMMOND, Justices.

HOLMAN, J.

Defendant appealed from a judgment of conviction of first degree murder.

Defendant claims that the court erroneously admitted evidence that defendant had committed other crimes and had been incarcerated therefor. A state's witness testified that he had had two conversations with defendant prior to the killing of the victim, in which defendant said that he was going to be sent right back from where he had come because he couldn't stand the victim and that once you kill it isn't hard to kill again.

■■ If this evidence was relevant to an issue in the instant case, it does not become inadmissible merely because it discloses that the defendant had committed crimes other than the one for which he was being tried. *State of Oregon v. Long,* 195 Or 81, 112, 244 P2d 1033 (1952). The evidence in question was highly relevant to prove premeditation and intent to kill the victim. Therefore, there was no error in the admission of the evidence.

■ Defendant next contends the court erred in failing to grant a mistrial because the state's attorney in his opening statement told the jury that the state's evidence would show that one of the state's witnesses and the defendant had been acquainted while in the state penitentiary. When the state's witness was questioned during the trial the court sustained an objection to an inquiry concerning the place of defendant's and the witness's previous acquaintanceship. The witness testified he met the defendant in a tavern by accident the day before the commission of the crime after a lapse in their acquaintanceship of about five years. The witness was almost continuously in the defendant's company from the time of the accidental meeting until after the killing of the victim the next day. He testified concerning defendant's actions and statements during that time. It is a marginal question whether

the trial court was correct in sustaining the objection to the testimony concerning the circumstances of the previous relationship between the witness and the defendant. Presuming that the court ruled correctly and, therefore, the state's attorney should not have made the statement to the jury, it does not follow that it was reversible error for the court to deny the mistrial unless the statement was prejudicial. In determining prejudice the court looks to the entire record. *State of Oregon v. Story*, 208 Or 441, 301 P2d 1043 (1956).

Consideration of the first assignment of error has already demonstrated that statements of a witness which were properly received in evidence informed the jury that defendant had previously been in difficulty with the law. In addition, three different jurors were asked by defendant's counsel on *voir dire* if it would prejudice the defendant in their minds if it were shown that he had a criminal record. There was evidence of still another statement by defendant to the effect that everyone in the house where he was staying had a criminal record and, therefore, he did not want to have anything to do with a firearm. It is apparent that the statement of counsel could not have been prejudicial because the jury, subsequently, legitimately came into possession of similar information.

Defendant finally contends that the court erroneously admitted evidence of statements he made to police officers while he was in custody. When he was originally warned of his constitutional right to silence and a lawyer he declined to answer any questions until he talked to a lawyer and, therefore, he argues that no further statements by him were admissible until he had an opportunity to consult one. He asserts as error the admission in evidence of two different statements which he made after he had requested the services of

a lawyer. There was evidence that while he was being taken from the jail office to his cell he told the attending officer that he thought someone was trying to frame him and that he wanted to talk to either a specific local lawyer or to the sheriff. The attending officer then took him to a telephone and defendant tried to call the lawyer but was unsuccessful in contacting him. He then attempted to call the sheriff and was again unsuccessful. After he completed his calls and was being taken to his cell, he volunteered the following statement which was not in response to any question: "I think I might have bought the gun that killed Leon."

The second statement was an attempted exculpatory one claimed to have been made to the sheriff. There was evidence that a message had been left for the sheriff indicating that defendant wanted to see him. When the sheriff came defendant was taken from his cell to see him. At that time the sheriff gave him a warning concerning his constitutional rights, omitting that part concerning defendant's right to a government supplied attorney if defendant could not afford to secure his own. However, in addition, the sheriff told defendant that he had no questions that he wished to ask and that anything defendant told him would have to come from defendant. Defendant, thereafter, made a long and involved statement which he believed to be exculpatory.

■■ The trial court admitted evidence of the two statements described above upon the basis that they were volunteered and were not the product of custodial questioning. There was evidence of sufficient historical facts to justify such a finding. *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968). Defendant relies upon the following language from *Miranda v. Arizona,* 384 US

436, 479, 86 S Ct 1602, 16 L ed2d 694, 10 ALR3d 974
(1966):

> "'* * * He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. * * * But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained *as a result of interrogation* can be used against him." (Emphasis ours.)

Defendant overlooks the emphasized part of the quotation upon which he depends. Volunteered statements not the result of any questioning or inducement are admissible even though the requirements of *Miranda* have not been fulfilled.

Defendant was questioned at other times by the police after he had requested an attorney and prior to the statements above set forth. This evidence was carefully excluded by the trial judge, who also found that the statements which were admitted in evidence were purely voluntary and not the result of defendant having previously made the excluded statements. However, defendant does not contend that the admitted statements were the fruit of the excluded responses to the illegal questioning.

■ Defendant also contends that he was inadequately advised of his constitutional right to remain silent and that he was not told of his right to an attorney at government expense. There was evidence that defendant was correctly advised of his rights shortly after 3 p.m. on the same day and prior to the time the statements were made that were admitted in evidence.

However, whether defendant was properly advised or not is irrelevant because the admitted statements were not the result of custodial *interrogation*.

The judgment of the trial court is affirmed.