Argued July 12, 1978, affirmed February 21, 1979

# STATE OF OREGON, *Respondent,*
*v.*
# STEVEN MICHAEL STILLING, *Petitioner.*
## (C 76-08-11946, CA 7651, SC 25737)

590 P2d 1223

[294]

Phillip M. Margolin, Portland, argued the cause for petitioner. With him on the brief was Nely L. Johnson, Metropolitan Public Defender, Portland.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, W. Michael Gillette, Solicitor General, and James C. Rhodes, Assistant Attorney General, Salem.

Before Holman, Presiding Justice, and Tongue, Howell, Bryson, Lent and Linde, Justices.

LENT, J.

**LENT, J.**

Defendant was convicted by a jury of burglary in the first degree. ORS 164.225. His conviction was appealed to and affirmed by the Court of Appeals, *State v. Stilling,* 31 Or App 703, 571 P2d 184 (1977). Review was allowed to determine (1) whether the trial court erred in giving an instruction to the jury which states that there is a disputable presumption that one intends the ordinary consequences of one's voluntary acts and that an unlawful act is done with an unlawful intent and that the jury may infer intent in accordance with this rule, and if error, whether it was harmless; (2) whether statements made by the defendant to the police after he was informed of his *Miranda* rights should have been suppressed and whether defendant properly preserved his right to assert on appeal this alleged error; and (3) whether the trial judge erred in instructing the jury about the flight of the defendant and if so, whether the instruction was prejudicial to the defendant.

The trial court's instruction on intent was as follows:

"There is a disputable presumption that a person intends the ordinary consequences of his voluntary acts and that an unlawful act was done with an unlawful intent. You may infer intent in accordance with this rule."

Defendant made the following objection to the instruction:

"* * * I have an exception to the intent instruction. The reason that I object to that instruction is that it implies that the State does not have the burden of proof beyond a reasonable doubt to prove that element."[1]

---

[1] In addition to asserting that the instruction *shifts* the burden of proof, defendant's objection can also be viewed as asserting that the instruction suggests a *different* standard, say preponderance of the evidence, for intent. This argument was not pursued by defendant in oral argument before this court, however, and we find that the standard of proof of beyond

This instruction is based in part on ORS 41.360, which provides in pertinent part:

"All presumptions other than conclusive presumptions are satisfactory, unless overcome. They are disputable presumptions, and may be controverted by other evidence, direct or indirect, but unless so overcome, the jury is bound to find according to the presumption. The following are of that kind:
"* * * * *

"(2) An unlawful act was done with an unlawful intent.

"(3) A person intends the ordinary consequence of his voluntary act.
"* * * * *."

In order to understand how this statutory presumption and the related instruction might affect the burden of proof on intent, it is helpful to review exactly what is required of the state. One element of the crime of first degree burglary is that the accused have "intent to commit a crime" within the dwelling he has unlawfully entered or remained. ORS 164.225. This court recently stated in *State v. Stockett,* 278 Or 637, 642, 565 P2d 739 (1977):

"The existence of the required mental state in a specific intent crime is an essential element of the offense charged. Under *Mullaney v. Wilbur, supra,* and *In re Winship,* 397 US 358, 90 S Ct 1068, 25 L ed 2d 368 (1970), the state cannot shift the burden on this issue to the defendant. * * *"

We went on to quote, 278 Or at 643, with approval from Justice Rehnquist's concurrence in *Mullaney v. Wilbur,* 421 US 684, 705, 95 S Ct 1881, 44 L ed 2d 508 (1975):

"I agree with the Court that *In re Winship,* 397 US 358, 25 L ed 2d 368, 90 S Ct 1068 (1970) does require

a reasonable doubt was made clear by the trial judge by several repetitions throughout the giving of the instructions.

Defendant does not raise a question as to which "intent" element of burglary in the first degree is the subject of the instruction. Implicit in his argument is an attack on the instruction only as it applies to the "intent" to commit theft as charged in the information.

that the prosecution prove beyond a reasonable doubt every element which constitutes the crime charged against a defendant. * * *"

In *Stockett* we ruled that ORS 161.305, which provided "partial responsibility" as an affirmative defense, was unconstitutional under the due process clause of the Fourteenth Amendment insofar as it placed the burden of proving partial responsibility or diminished intent on the defendant.

To resolve the question of whether the instruction at issue here does shift the burden of proof on intent requires an understanding of what exactly it is in the instruction that might shift the burden. The primary focus of defendant's objection seems to be with the words "disputable presumption" which defendant points out in a memorandum to this court as having a commonly understood meaning of acceptance of something as true unless disputed.

While the courts in this state have ruled it impermissible to explain the effect of a disputable presumption in terms of requiring opposing evidence when such instruction runs contrary to the burden of proof in the case,[2] no Oregon court has considered whether only the usage of the words "disputable presumption" in instructions in a criminal case is also impermissible for running contrary to the burden of proof.

We hold that usage of the words "disputable presumption" or "presumption" in a jury instruction on the intent element of a crime to be impermissible when the presumption runs contrary to the burden of proof in the case. Such language is suggestive that the state does not have to carry the burden of proof on the

---

[2] Though not in a criminal case, this court in *U. S. National Bank v. Lloyd's*, 239 Or 298, 382 P2d 851, 396 P2d at 765 (1964) found that an instruction on the presumption against suicide contradicted an instruction that the plaintiff has the burden of proving death by accident. The opinion resolved the contradiction, 239 Or at 325-326, by altering the form of the presumption instruction, declaring it improper to instruct the jury "that the presumption stands unless overcome by opposing evidence." Compare also *State v. Anderson,* 33 Or App 43, 575 P2d 677 (1978).

intent element. We hold, though, that the instruction given in this case did not deny defendant due process by shifting the burden of proof, since it did not explain the effect of the disputable presumption and was qualified in terms of a permissive inference.

Whether the jury may be instructed that it may *infer* that "an unlawful act was done with an unlawful intent" and "a person intends the ordinary consequence of his voluntary act" presents a different issue.[3] The Ninth Circuit in *McAbee v. United States,* 434 F2d 361, 362-363 (9th Cir 1970) ably stated the distinction between a presumption and an inference:

" * * * A rebuttable presumption is the means by which a rule of substantive law is invoked to *compel* the trier of fact to reach a particular conclusion, in the absence of contrary evidence, once the facts constituting its hypothesis are established. (9 J. Wigmore, Evidence (3d ed 1940) § 2491, at 288-89.) An inference, on the other hand, is no more than a logical tool enabling the trier of fact to proceed from one fact to another if the trier believes that the weight of the evidence and the experiential accuracy of the inference warrant so doing. The rebuttable presumption forces the defendant to come forth or to suffer certain defeat on the issue involved. An inference does not put the defendant in such a position. It does not shift the burden of going forward to the defendant, for the trier of fact is left free to reject the inference in part or in whole. Nor does it change the

_____

[3] The Court of Appeals states, 31 Or App at 707, that the following instruction given in *State v. Hood,* 225 Or 40, 50, 356 P2d 1100 (1960) and *State v. Gibbons,* 228 Or 238, 246, 364 P2d 611 (1961) is "indistinguishable from the one in issue here":

"I instruct you that the intent to injure the one assailed may be inferred from the assault."

Actually, the instruction and cases are quite different from the instruction and case at hand. First of all, the instruction in those cases does not mention a "disputable presumption." Also, though the instruction seems to refer to a specific intent element, "intent to injure," such intent is not mentioned in the definition of the offense, assault with a dangerous weapon. ORS 163.250 (repealed 1971). Assuming a specific intent was required, the instruction appears to have been erroneous in stating that the specific intent may be inferred from the "act" of the offense.

[298]

burden of persuasion or relieve the Government of its obligation to prove each element of the crime beyond a reasonable doubt. (9 J. Wigmore, *supra* § 2513, at 417-24). * * *"

There is usually no way for the jury to determine whether a person had intent except by inference. Direct evidence of a state of mind is usually not available. *State v. Elliott,* 234 Or 522, 528, 383 P2d 382 (1963). An inference instruction advises the jury as to how it may make its decision on intent, and in particular may serve to inform the jury that such an inference is to be based on the surrounding circumstances rather than just any unlawful act which is part of the offense.

While it may not be improper to instruct a jury that it may draw certain inferences to determine intent, the wording is crucial, for it may suggest a faulty reasoning process. In *Colson v. Cupp,*[4] 449 F2d 730, 731 (9th Cir 1971), the Court ruled that the following sentence in an instruction was "hopelessly circuitous": "The law also presumes that an unlawful act was done with an unlawful intent." The Court stated, 449 F2d at 731,

"* * * When the lawfulness of an act depends upon the guilty intent with which the act was done, it is patently wrong to tell a jury that it can infer the requisite intent simply from proof that a defendant did the act. * * *"

Considering burglary as an "act," it is true that the "intent to commit a crime therein" is a separate element of the offense, distinguishable from the "act." "Burglary," however, consists of more than a single unlawful act, and as an "act" burglary is never lawful. It is probably more understandable to view burglary as consisting of several elements, one of which is a

---

[4] We regard as not completely accurate the Court of Appeals statement in this case, 31 Or App at 706, that the Ninth Circuit declared unconstitutional a substantially similar instruction in *Colson.* In that case the Ninth Circuit decided it didn't have to reach that question since the instruction did not affect the conviction.

[299]

specific intent which is not to be confused with the mental state which accompanies another element, say, the act of unlawful entry.

■ Having decided that the instruction given in this case was confusing, because of the mention of a "disputable presumption" and because of an insufficiently explained inference, but not unconstitutional because it did not shift the burden of proof, we must next determine whether the giving of the instruction was reversible error. In *Stockett,* 278 Or at 645, we cited several factors in determining that the failure to give an instruction was not prejudicial to the defendant in that case. The factors included the other instructions given to the jury, which defined intent and provided that the state has the burden of proof beyond a reasonable doubt, and the overall evidence which clearly indicated that the defendant had the requisite intent.

Our examination of the entire record brings us to the conclusion that this error was very unlikely to have changed the result of this trial. *Cf., State v. Van Hooser,* 266 Or 19, 25-26, 511 P2d 359 (1973). Specifically with regard to the harm of the words "disputable presumption," not only were other instructions[5] clear that the state has the burden of proof, but the instruction containing the erroneous language concluded by characterizing itself not as a presumption, but as in inference, "You may infer intent in accordance with this rule." As for the danger of confusion from the inference on intent, we not only find that the instructions as a whole were quite clear, but also note

---

[5] The Ninth Circuit, in determining whether the giving of an instruction similar to the one here warrants reversal, has ruled that the instructions must be viewed as a whole and within the context of the whole trial. *United States v. Eaglin,* 571 F2d 1069, 1076 (9th Cir 1977), *United States v. Silla,* 555 F2d 703, 706 (9th Cir 1977).

On the other hand, the Fifth Circuit in *United States v. Chiantese,* 560 F2d 1244, 1255 (5th Cir 1977), has ruled that the weighing of the harm to the accused "shall not include consideration of whether a defective charge has been cured by prior or subsequent statements," apparently determining that such is necessary to dissuade continued use of the instruction.

that the "intent to commit a crime therein" was described in the instructions as a "material element" which the state must prove beyond a reasonable doubt.

Beyond the instructions as a whole, there was strong evidence from the surrounding circumstances indicating that defendant had the requisite intent. First of all, though nothing was taken from the victim's apartment, drawers had been opened and clothing was hanging out. Also, after being picked up and advised of his *Miranda* rights the defendant responded, according to a detective's testimony, that there was no sense talking about it since "we could easily put him in one burglary anyway." There was substantial and convincing evidence of the other elements of the offense as well. We conclude that the error committed was very unlikely to have changed the result of the trial.

■ The second issue on which review in this court was allowed is whether statements made by the defendant to the police after he was informed of his *Miranda* rights should have been suppressed.[6] The defendant was first advised of his *Miranda* rights by a police officer immediately after the arrest, and the defendant indicated then that he did not wish to make a statement. After being taken to the scene of the crime and identified by witnesses as the suspect, he was taken to the Detective Division where he was again advised of his rights, by two detectives, and signed a "Constitutional Rights Warning and Interrogation Form." At trial, the following testimony of one of the detectives occurred:

> "Q: After the defendant was advised of his rights and signed that form in your presence what conversation did you have with him?
> "* * * * *

---

[6] The related issue of whether defendant properly preserved his right to assert this alleged error on appeal was settled in oral argument before this court by the state conceding, and we believe correctly, that counsel did preserve at the pre-trial suppression hearing the objection as to all the statements.

"A: I asked him if he wished to talk about it. He stated, no, there was no sense talking about it, that we could easily put him in one burglary anyway. So consequently, we didn't talk to him about the burglary anymore."[7]

The detective also testified at trial that the defendant was then asked about the car he had been driving, which is the one involved in the burglary, and that the defendant "stated he had borrowed it from a friend." In addition, the defendant had been asked about a knife found on him, but no testimony or evidence was introduced on that subject at trial.

■ Defendant cites *Michigan v. Mosley,* 423 US 96, 96 S Ct 321, 46 L ed 2d 313 (1975), for the proposition that defendant's statements should have been suppressed because the police did not honor his decision to remain silent. The Supreme Court held, 423 US at 104: "We therefore conclude that the admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his 'right to cut off questioning' 'was scrupulously honored.' " (footnote omitted) The *Mosley* opinion suffers from the lack of a clear articulation of the factors to be considered, and their relative importance,

---

[7] Making an argument here not made below, defendant contends that such testimony amounted to the prosecutor improperly using at trial the defendant's assertion of his Fifth Amendment privilege, citing *State v. Dodson,* 22 Or App 542, 540 P2d 380 (1975) and *State v. Hunt,* 15 Or App 76, 514 P2d 1363 (1973).

In *State v. Flores,* 280 Or 273, 279, 570 P2d 965 (1977), we reviewed the voluntariness of a consent to search in light of Art I, § 9, of the Oregon Constitution, a perspective on the issue not raised below:

"* * * Although the general rule precluding appellate review of questions not raised in the trial court applies to constitutional questions, * * *, we have adopted a rule of flexibility in cases involving an individual's liberty. * * * Where, as here, the record is sufficient to make the constitutional determination, we will do so."

We find that the testimony in the case at hand was not an improper use of defendant's assertion of his Fifth Amendment privilege. This was not a tactic to show the defendant's refusal to talk, but rather was to show what defendant admitted. That the response was an assertion of the defendant's Fifth Amendment privilege also would not have been very apparent to the jury considering that the testimony was that he did talk to the detectives.

[302]

in determining whether a suspect's "right to cut off questioning" was "scrupulously honored." At one point in the opinion, though, 423 US at 105-106, the Court did focus on several factors:

> "This is not a case, therefore, where the police failed to honor a decision of a person in custody to cut off questioning, either by refusing to discontinue the interrogation upon request or by persisting in repeated efforts to wear down his resistance and make him change his mind. In contrast to such practices, the police here immediately ceased the interrogation, resumed questioning only after the passage of a significant period of time and the provision of a fresh set of warnings, and restricted the second interrogation to a crime that had not been a subject of the earlier interrogation."

Here the detectives' initial question which elicited defendant's "burglary" comment[8] did not run contrary to the above factors except that the topic was the same crime asked about by the police officer. However, the mere fact that the detectives at the police station asked defendant if he wanted to talk about the burglary, when he had earlier been asked that by a police officer driving him to the scene of the crime just after the arrest, did not constitute a violation of the precepts of *Mosley.*

■ The questioning about the car after defendant said he did not want to talk about the burglary is not so clear. Assuming, without deciding, that defendant's response to the detective's question constituted, in the language of *Mosley,* a "request to discontinue the interrogation" or a "decision to remain silent," and that the statement about the car should thus not have been introduced, we nevertheless find that introduction of the evidence constituted harmless error.

---

[8] We disagree with the Court of Appeals, 31 Or App at 711, that the first incriminatory statement made to the detective by the defendant was volunteered in the sense of not responding to a question. *State v. Joseph,* 252 Or 610, 451 P2d 468 (1969). It was volunteered in the sense that in indicating he didn't want to talk about the burglary, he did talk about it.

■ This court has not ruled before on whether a violation of a *Miranda* right constitutes harmless error. Since a federal constitutional error is at issue here, the standard for deciding if it is harmless is the federal standard. The U. S. Supreme Court's rule in *Chapman v. California,* 386 US 18, 24, 87 S Ct 824, 17 L ed 2d 705, reh den 386 US 987 (1967), is that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."

The evidence connecting the defendant with the car used in the burglary was very clear. Two witnesses saw the defendant leave their house, get into the car, and back away from them. They took down the car's license number and gave it, along with the car's description, to the police. Soon thereafter the police, using the description and license number, found the car. Soon after that a detective observed the defendant approach the car. When the police returned the defendant to the scene of the crime, the two witnesses identified him as the person who had left the house and had driven away in the car. Because there was such strong and substantial evidence establishing the same fact as the statement that defendant had some connection with the car, and since such evidence was not derived from the statement, we find that introduction of the statement was harmless beyond a reasonable doubt.

■ The third issue on which review in this court was allowed is whether the trial judge erred in instructing the jury about the flight of the defendant. If so, a related issue is whether the instruction was prejudicial to the defendant. The instruction was as follows:

"The flight of the defendant or his concealment from the police after the commission of a crime is not sufficient by itself to establish his guilt, but it is a fact which, if proven, may be considered by you in the light of all the other facts and circumstances in the case in deciding the question of the defendant's guilt. It is your duty to determine whether or not there was

such flight or concealment and if you find there was, then it is your duty also to determine what the defendant's purpose or motive was which prompted him to act in that manner."

Defendant objected to the instruction because it "may have given undue emphasis on the fact that it could be used to determine the guilt of the defendant" and because there was evidence of another possible motive for the flight.

Since this trial was held, we reviewed the propriety of giving an instruction on flight in *State v. McCormick,* 280 Or 417, 571 P2d 499 (1977). While in that case we decided it was not error to refuse the instruction, which concerned the flight of a witness and was requested by the defendant, here we are concerned with the defendant's objection that the instruction should not have been given to reflect on his conduct. The same concerns which we expressed on the flight instruction in *McCormick,* though, are still applicable. We find no reversible error with regard to those concerns since there was sufficient evidence here that flight had taken place and the instruction did include the qualification that such flight is not in itself sufficient evidence of guilt but is only one circumstance to be considered by the jury.

However, because the significance of flight should be left to argument, in all future trials instructions on the significance of flight should not be given.

Affirmed.