2014 UT App 256

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
SARAH ANN LOPRINZI,
Defendant and Appellant.

Opinion
No. 20120513-CA
Filed October 23, 2014

Third District Court, Salt Lake Department
The Honorable Judith S.H. Atherton
No. 101900026

Michael P. Studebaker, Attorney for Appellant

Sean D. Reyes and Jeanne B. Inouye, Attorneys
for Appellee

JUDGE STEPHEN L. ROTH authored this Opinion, in which SENIOR JUDGE RUSSELL W. BENCH concurred.[1] JUDGE J. FREDERIC VOROS JR. concurred, with opinion, except that as to Part II.A., he concurred in the result.

ROTH, Judge:

¶1 Sarah Ann LoPrinzi appeals her two convictions for unlawful sexual activity with a minor, asserting that the trial court erred in multiple ways. First, she contends that the trial

---

1. The Honorable Russell W. Bench, Senior Judge, sat by special assignment as authorized by law. *See generally* Utah R. Jud. Admin. 11-201(6).

court should have granted her motion to either recuse the entire Salt Lake County District Attorney's Office from prosecuting her case or dismiss the case altogether. Second, she challenges two of the court's decisions regarding jury instructions. Finally, she claims that the court erred in denying her motion for a new trial because the verdicts were inconsistent. We affirm.

BACKGROUND

¶2     In January 2010, LoPrinzi was charged with three counts of unlawful sexual activity with a minor, stemming from sexual acts she had engaged in with a fifteen-year-old boy. Prior to trial, LoPrinzi moved to have the entire Salt Lake County District Attorney's Office disqualified from prosecuting her case or, alternatively, to dismiss the case. Her motion alleged prosecutorial misconduct on the basis that her former attorney had provided the entire defense file to the prosecutor and that the prosecutor's receipt of this file "adversely affected the representation . . . and [had] given a significantly undue advantage for the prosecution."[2] The prosecutor opposed the motion on the basis that it had received only LoPrinzi's mental health records and that defense counsel had properly shared that information because LoPrinzi had intended to apply for prosecution in the mental health court. The prosecutor further argued that even though LoPrinzi had since withdrawn her application for the mental health court, the State would still be entitled to those records because LoPrinzi intended to assert a diminished mental capacity defense at trial, which required that

---

2. The motion to disqualify the Salt Lake County District Attorney's Office or to dismiss the case was filed by LoPrinzi's second defense attorney.

her records be made available to the prosecution for review.[3] The prosecutor denied receiving any other information from LoPrinzi's defense file. The trial court held an evidentiary hearing at which LoPrinzi's former attorney testified to the same facts asserted by the prosecutor in his opposition to the motion. Having heard the evidence, the court found that LoPrinzi's former counsel "delivered only the mental health records . . . , not other confidential materials in the defense counsel's file" and concluded that "[t]here was no prosecutorial misconduct for the District Attorney to receive[] the mental health records . . . , as [LoPrinzi] was attempting to apply for mental health court and file a Diminished Mental Capacity defense." The court denied LoPrinzi's motion to disqualify the prosecutor's office or dismiss the case. LoPrinzi was eventually tried before a jury.

¶3     At trial, the complaining witness testified that between July 2 and July 5, 2009, when he was fifteen years old, he and LoPrinzi engaged in multiple acts of oral and vaginal intercourse. He testified that he had planned to go camping with a friend, who was a member of the LoPrinzi family (Friend), and a couple of other friends for the holiday weekend. However, the camping trip fell through, and they decided to spend the weekend at LoPrinzi's house instead. The complaining witness arrived on either Thursday or Friday night and stayed through Sunday. He testified that on the night that he arrived, he had oral and vaginal intercourse with LoPrinzi. He testified that after they finished, he left LoPrinzi's bedroom. On the second day, the complaining witness went to LoPrinzi's bedroom for the purpose of having sex. They again engaged in oral and vaginal

---

3. The response also asserted that because LoPrinzi had withdrawn her application to the mental health court, neither the prosecutor nor anyone else in the office had ever reviewed the mental health records. The prosecution did not introduce evidence to support this statement, however, and the trial court did not cite it as a basis for its decision.

intercourse, but this time the complaining witness spent the night in LoPrinzi's bedroom. During one of these two incidents, LoPrinzi's ex-husband arrived at LoPrinzi's home and heard activity consistent with sexual intercourse coming from LoPrinzi's bedroom. On the third morning, the complaining witness and LoPrinzi began having oral and vaginal intercourse but were interrupted by Friend. LoPrinzi's ex-husband arrived soon after, and he confronted the complaining witness about his activities with LoPrinzi before calling the police. The complaining witness then went to another friend's house, where his parents picked him up. He and his parents subsequently reported the events to the police.

¶4 LoPrinzi's ex-husband and Friend offered corroboration for the complaining witness's account of two of the incidents. They each testified that over the course of the weekend they had heard and observed activity between LoPrinzi and the complaining witness that was consistent with what he had reported.

¶5 LoPrinzi testified in her defense. She denied that she had engaged in any sexual activity with the complaining witness.

¶6 The investigating officer testified that on July 9 or July 10, 2009, he had talked with LoPrinzi by phone and told her about the allegations of sexual activity with the complaining witness made by her ex-husband, the complaining witness, and the complaining witness's parents. The police scheduled an appointment for LoPrinzi to come in to talk with the police about the matter. When LoPrinzi failed to appear for the appointment, the officer contacted LoPrinzi's ex-husband and discovered that LoPrinzi had moved. The ex-husband testified that he had gone to LoPrinzi's house on July 24 or July 25, 2009, and the house appeared to have been abandoned: "Things had been dumped everywhere," "[t]he place had been ransacked," "[t]he walls . . . had been scrubbed down," "Ms. LoPrinzi's house key was hanging on her bedroom door," and the pets, LoPrinzi's teenage son, and LoPrinzi were "gone." Some months

later, the investigating officer learned that LoPrinzi was living in Wyoming, and a warrant for LoPrinzi's arrest issued in January 2010.

¶7     LoPrinzi admitted that she relocated to Wyoming shortly after her initial conversation with the police. She denied, however, that she had abandoned her home or that she had left the house "ramshackle" or "trashed." She claimed that she was not trying to evade the investigation, explaining that she was not aware of any obligation to meet with the police when she moved and citing her return to Utah once she became aware of the arrest warrant. On cross-examination, the investigating officer acknowledged that although LoPrinzi had failed to show up for a scheduled appointment, he had told her that she was not obligated to come to that appointment and had not otherwise indicated that she was under arrest.

¶8     Counsel for LoPrinzi and the State presented arguments for and against giving the jury two instructions. First, LoPrinzi argued that the jury should be instructed on the lesser included offense of sexual battery. The court declined to give the sexual battery instruction, reasoning that there was neither a sufficient overlap of elements for unlawful sexual activity with a minor and sexual battery nor "a rational basis for a verdict acquitting of the primary offense, and convicting her of the included offense." *See* Utah Code Ann. § 76-1-402(4) (LexisNexis 2012)[4] ("The court shall not be obligated to charge the jury with respect to an included offense unless there is a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense."). Second, LoPrinzi opposed giving the jury a flight instruction because LoPrinzi had never been

---

4. The relevant code sections have not been amended in any way material to our analysis since the time of the underlying offense or trial. Accordingly, we cite the current version of the Utah Code for the convenience of the reader.

advised that she had any obligation to cooperate with law enforcement or to remain in the state. The State argued that a flight instruction was warranted because LoPrinzi's sudden departure after talking to the police implied a consciousness of guilt. The trial court agreed that there was a basis in the evidence and gave the flight instruction. The jury convicted LoPrinzi of two counts of unlawful sexual activity with a minor (Counts 1 and 3) but acquitted her of the third (Count 2). LoPrinzi now appeals.

ISSUES AND STANDARDS OF REVIEW

¶9 LoPrinzi first contends that the trial court improperly denied her motion either to disqualify the entire Salt Lake County District Attorney's Office from prosecuting her case or to dismiss the case based on prosecutorial misconduct. We review a decision on a motion to dismiss under rule 25 of the Utah Rules of Criminal Procedure for abuse of discretion, noting that dismissals "grounded solely on prosecutorial misconduct are rarely appropriate." *State v. White*, 2011 UT App 155, ¶¶ 7, 12, 256 P.3d 255 (citation and internal quotation marks omitted) (citing Utah R. Crim. P. 25(a)). We have stated that "[t]rial courts are generally allowed considerable discretion in granting or denying motions to disqualify counsel, and such decisions will only be overturned when the discretion is exceeded." *State v. Balfour*, 2008 UT App 410, ¶ 11, 198 P.3d 471. Normally, in "situations implicating [attorney ethical] rules," we review the trial court's legal interpretation of the requirements of those rules for correctness. *Id.* But LoPrinzi has not challenged, or even acknowledged, the finding of fact underlying the trial court's determination that there was no misconduct, nor has she identified any rule that the conduct the court found to have occurred would violate. Accordingly, we have no occasion to decide whether the court correctly applied any rule of conduct to the unchallenged facts. We therefore simply affirm the trial court's determination that LoPrinzi has failed to show that any misconduct occurred.

¶10    Second, LoPrinzi challenges the trial court's decisions to deny her request for an instruction on sexual battery as a lesser included offense and to give the jury a flight instruction. We review a trial court's decision not to give a lesser included offense instruction for abuse of discretion. *State v. Berriel*, 2013 UT 19, ¶ 8, 299 P.3d 1133 (noting that the precise amount of deference afforded on review depends on the type of issue presented). "We review the trial court's decision to give a flight instruction for correctness." *State v. Riggs*, 1999 UT App 271, ¶ 7, 987 P.2d 1281, *abrogated on other grounds by State v. Levin*, 2006 UT 50, 144 P.3d 1095.[5]

¶11    Finally, LoPrinzi asserts that the court improperly denied her motion for a new trial because the jury's verdicts on the charges against her were inconsistent.

> When considering an inconsistency challenge to jury verdicts, we review the evidence in the light most favorable to the verdict and will not overturn a jury's verdict of criminal conviction unless

---

5. The *State v. Berriel*, 2013 UT 19, 299 P.3d 1133, decision is specifically limited to the "refusal to give a jury instruction." *Id.* ¶ 8 (citation and internal quotation marks omitted). We therefore cite the standard of review set forth in *State v. Riggs*, 1999 UT App 271, 987 P.2d 1281, *abrogated on other grounds by State v. Levin*, 2006 UT 50, 144 P.3d 1095, which involves the giving of a flight instruction and therefore is directly on point. We recognize that there may be some inconsistency in treating a trial court's decision to refuse an instruction as discretionary while treating its decision to give one as a matter of correctness. But because "the correctness standard [is] more favorable to [LoPrinzi] than the abuse-of-discretion standard" and because LoPrinzi cannot prevail under even that more favorable standard, we need not resolve whether the differential treatment is warranted. *See Berriel*, 2013 UT 19, ¶ 11.

> reasonable minds could not rationally have arrived at a verdict of guilty beyond a reasonable doubt based on the law and on the evidence presented.

*State v. Hancock*, 874 P.2d 132, 134 (Utah Ct. App. 1994) (citation and internal quotation marks omitted).

ANALYSIS

I. Motion to Disqualify/Dismiss

¶12    LoPrinzi's first argument on appeal is that the trial court abused its discretion when it denied her motion to disqualify the entire Salt Lake County District Attorney's Office or, in the alternative, to dismiss the case after her original defense counsel shared her confidential defense file with the prosecutor. We conclude that because LoPrinzi has not challenged the trial court's finding that there was no prosecutorial misconduct, the court properly denied the motion.

¶13    The basis for LoPrinzi's motion was prosecutorial misconduct. According to LoPrinzi, the district attorney's office obtained confidential information from her file, significantly prejudicing her defense. LoPrinzi's argument to the trial court, as well as on appeal, however, presumes that her counsel turned over LoPrinzi's *entire* confidential file to the prosecutor. But, following an evidentiary hearing at which LoPrinzi's original defense counsel testified, the trial court found that counsel "delivered only the mental health records . . . , not other confidential materials in the defense counsel's file" and did so for the "purpose of considering [LoPrinzi's] admission to mental health court." As a result, it concluded that "[t]here was no prosecutorial misconduct for the District Attorney to receive[] the mental health records . . . , as [LoPrinzi] was attempting to apply for mental health court and file a Diminished Mental Capacity defense."

¶14 LoPrinzi has not challenged the trial court's finding that the disclosure of her file was limited to her mental health records. Rather, despite that contrary finding, LoPrinzi's argument on appeal is based on the premise that her former defense counsel turned over the entire file. LoPrinzi advances this position by citing emails between LoPrinzi and her former defense counsel and between defense counsel and the prosecutor in which defense counsel indicated that the prosecutor "ha[d defense counsel's] file for Sarah LoPrinzi because [the prosecutor and the District Attorney] were going to review it." At the hearing, however, the former defense counsel clarified that the "file" mentioned in the emails "refers to the mental health records" and not to the defense file as a whole. The trial court believed defense counsel's testimony, and LoPrinzi has made no effort on appeal to demonstrate that the finding was clearly erroneous. *See State v. Balfour*, 2008 UT App 410, ¶ 11, 198 P.3d 471 ("[W]e review the district court's factual conclusions [regarding attorney disqualification] under a clear error standard.").

¶15 Furthermore, LoPrinzi does not claim on appeal that the disclosure of just her mental health records to the prosecution required disqualification. Indeed, she does not challenge at all the propriety of the prosecutor's receipt of her mental health records for the limited purpose of evaluating her eligibility for the mental health court or in anticipation of a diminished capacity defense. Accordingly, we affirm the trial court's conclusion that there was no prosecutorial misconduct under the circumstances. *See State v. Turner*, 2012 UT App 189, ¶ 29, 283 P.3d 527 (noting that reviewing courts do not address issues that a party has not briefed). And where there was no misconduct, it was appropriate for the trial court to deny LoPrinzi's motion to either disqualify the district attorney's office or to dismiss the case.

## II. Jury Instructions

¶16　LoPrinzi next challenges the trial court's refusal to give the jury a lesser included offense instruction on sexual battery and its decision to instruct the jury on flight. We address each issue in turn.

### A.　Sexual Battery Instruction

¶17　A criminal defendant is entitled to a jury instruction on a lesser included offense if (1) "the charged offense and the lesser . . . offense have overlapping statutory elements" *and* (2) there is a rational basis in the record as a whole for convicting the defendant of the lesser offense rather than the one charged. *State v. Powell*, 2007 UT 9, ¶¶ 24, 27, 154 P.3d 788 (citing *State v. Baker*, 671 P.2d 152, 158–59 (Utah 1983)); *see also* Utah Code Ann. § 76-1-402(4) (LexisNexis 2012). "The analysis of whether an offense is included for purposes of deciding whether to grant a defendant's request for a jury instruction must . . . begin with the proof of facts at trial." *Baker*, 671 P.2d at 158. In this case, the jury was presented with two alternative versions of the events over the July 4, 2009 holiday weekend: (1) the complaining witness's account that LoPrinzi engaged in oral and vaginal sex with him and (2) LoPrinzi's account that there was no sexual contact between them at all.

¶18　Unlawful sexual activity with a minor occurs when a person "has sexual intercourse with" another person between the ages of fourteen and sixteen or "engages in any sexual act with the minor involving the genitals of one person and the mouth . . . of another."[6] Utah Code Ann. § 76-5-401. Sexual battery involves "intentional[] touch[ing], whether or not

---

6. The other variations of unlawful sexual activity of a minor do not apply given the facts presented here. *See* Utah Code Ann. § 76-5-401(2)(b)–(c) (LexisNexis 2012).

through clothing, [of] the anus, buttocks, or any part of the genitals of another person, or the breast of a female person" under circumstances that "the actor knows or should know will likely cause affront or alarm to the person touched." *Id.* § 76-9-702.1(1) (LexisNexis Supp. 2013). The complaining witness's trial testimony demonstrates that LoPrinzi had oral and vaginal intercourse with him when he was fifteen years old. It is not apparent from the language of the sexual battery statute itself that the kind of "touching" that occurs through vaginal or oral intercourse falls within the scope of the "intentional[] touch[ing]" that the sexual battery statute intends to punish. *See id.* But even if it does, we nevertheless conclude that there was no rational basis in the facts of this case for instructing the jury on sexual battery.

¶19    A rational basis exists if the evidence "view[ed] . . . in the light most favorable to the defendant requesting the instruction" would justify sending the question to the jury. *Powell*, 2007 UT 9, ¶ 27 (citation and internal quotation marks omitted); *see also Baker*, 671 P.2d at 159. In assessing whether there is a rational basis for a particular lesser included instruction, a court must take into account whether there are multiple variations of the charged or lesser offense and whether there are alternative interpretations the jury could reasonably give to the evidence. *Baker*, 671 P.2d at 159.

¶20    We agree with the trial court that the evidence at trial does not provide a rational basis for the jury to both acquit LoPrinzi of unlawful sexual activity with a minor and convict her of sexual battery. In particular, there is no evidence that LoPrinzi touched the complaining witness's genitals under circumstances in which she knew or should have known her touching was likely to cause him "affront or alarm," an element of sexual battery. *See* Utah Code Ann. § 76-9-702.1(1). Because the offense of sexual battery may be committed on a person of any age, not just a minor, *id.* § 76-9-702.1, the affront or alarm language must implicate a lack of consent. Certainly a person could not be convicted of sexual battery if the person touched a

statutorily protected body part with the other's consent because such circumstances would not suggest that the touching was "likely [to] cause affront or alarm to the person touched." *Id.* § 76-9-702.1(1). In other words, consent seems to preclude a response of "affront or alarm [by] the person touched" and therefore an appreciation by the actor that the touching was likely to evoke such a response. *See id.*

¶21 On the other hand, unlawful sexual activity with a minor, by its definition, seems to involve consensual sexual activity:

> A person commits unlawful sexual activity with a minor[, defined as a person who is older than fourteen but younger than sixteen,] if, *under circumstances not amounting to rape . . . [or] forcible sodomy . . . ,* the actor: (a) has sexual intercourse with the minor; [or] (b) engages in any sexual act with the minor involving the genitals of one person and the mouth . . . of another person . . . .

*Id.* § 76-5-401 (LexisNexis 2012) (emphasis added); *see also id.* § 76-5-402 (LexisNexis Supp. 2013) (defining "[r]ape" as "sexual intercourse . . . without the victim's consent"); *id.* § 76-5-403(1)–(2) (defining "[f]orcible sodomy" as "when the actor engages in any sexual act with a person who is 14 years of age or older involving the genitals of one person and mouth or anus of another person" "without the other's consent"); *cf. State v. Elton*, 680 P.2d 727, 728–29 & n.5 (Utah 1984) (stating that the unlawful sexual intercourse statute, which precluded a person from having "sexual intercourse with a person, not that person's spouse, who is under sixteen years of age," "prohibited . . . not rape but a consensual act on the part of both parties"), *superseded on other grounds by statute as stated in State v. Jimenez*, 2012 UT 41, ¶ 9 n.5, 284 P.3d 640. The legislature, however, has determined that persons between the ages of fourteen and sixteen should be protected from this type of conduct even when they willingly participate because of their vulnerability to exploitation. *See State v. Martinez*, 2000 UT App 320, ¶¶ 22–24 & n.11, 14 P.3d 114

(explaining that the legislature has a "legitimate interest in protecting the health and safety of our children" and that it has elected to provide protections on a scale based on the age of the minor, with children under fourteen having no capacity to consent and minors between fourteen and eighteen having only limited capacity to consent to sexual activity with adults); *see also Elton*, 680 P.2d at 729 (noting that aside from deterring intercourse outside of wedlock, the unlawful sexual intercourse statute is intended to protect "younger, more impressionable, and perhaps more persuadable persons . . . from engaging in sexual intercourse" and to prevent them from suffering from "the personal and social consequences of an out-of-wedlock pregnancy" when they "are not likely to be fully knowledgeable in any realistic way about" such consequences). Thus, unlike rape and forcible sodomy, unlawful sexual activity with a minor penalizes a person for sexual activity not because of a lack of consent but rather solely based on the age of the participants.

¶22 Because the offense of sexual battery punishes nonconsensual touching of "any part of the genitals of another person," Utah Code Ann. § 76-9-702.1, and unlawful sexual activity with a minor seems to punish consensual sexual intercourse or oral sex performed on a person between fourteen and sixteen years of age, a rational basis for sending both charges to the jury can exist only if the evidence raises a question about consent.[7] The evidence in this case, however, supports

---

7. We have our doubts about whether the legislature intended sexual battery to be a lesser included offense to offenses involving sexual intercourse or sodomy. Conduct that amounts to sexual intercourse or sodomy performed on a person without his or her consent is explicitly excluded from the scope of the sexual battery statute. Utah Code Ann. § 76-9-702.1(1), (2)(a), (e) (LexisNexis Supp. 2013). But the unlawful sexual activity with a minor statute makes even consensual acts with a person between ages fourteen and sixteen unlawful. While it seems unlikely to us

(continued...)

only two pertinent alternatives: Either the complaining witness consented to the sexual activity (according to his testimony) or there was no sexual activity at all (according to LoPrinzi's). Thus, the evidence supported either a conviction for unlawful sexual activity with a minor (if the jury believed the complaining witness) or an outright acquittal (if the jury believed LoPrinzi). But it did not provide the jury with a rational basis to both acquit LoPrinzi of the unlawful sexual activity charges and convict her of sexual battery. [8]

¶23    Accordingly, we find no abuse of discretion in the trial court's refusal to give an instruction on sexual battery as a lesser included offense of unlawful sexual activity with a minor.

B.    Flight Instruction

¶24    Over LoPrinzi's objection, the trial court gave the jury a flight instruction suggesting inferences could be drawn from

---

that any conduct with a minor within that age range that was *not* consensual would be charged under the unlawful sexual activity statute rather than as a more serious forcible offense, the question has not been presented here in a way that we believe would justify a conclusive determination that sexual battery could never be a lesser included offense of unlawful sexual activity with a minor. Rather, that is an issue for another day.

8. LoPrinzi points to evidence of other activities besides oral and vaginal intercourse that she argues warranted a sexual battery instruction. But the activities she identifies do not qualify as intentional touching under the sexual battery statute, either because they do not involve protected body parts (e.g., LoPrinzi's rubbing of the complaining witness's chest and leg) or they involve the complaining witness's touching of LoPrinzi (e.g., the complaining witness's suggestive slap of LoPrinzi's buttocks).

LoPrinzi having left the state of Utah after her phone conversation with the police. The instruction provided,

> Evidence was introduced at trial that the defendant may have fled or attempted to flee after having been accused of the crime. This evidence alone is not enough to establish guilt. However, if you believe that evidence, you may consider it along with the rest of the evidence in reaching a verdict. It's up to you to decide how much weight to give that evidence.
>
> Keep in mind that there may be reasons for flight that could be fully consistent with innocence. Even if you choose to infer from the evidence that the defendant has a "guilty conscience," that does not necessarily mean she is guilty of the crime charged.

We conclude that the trial court did not err in giving this instruction.

¶25 Evidence of flight is probative because it can demonstrate consciousness of guilt. *State v. Franklin*, 735 P.2d 34, 39 (Utah 1987); *see also Black's Law Dictionary* 714 (9th ed. 2009) (defining "flight" as "[t]he act or an instance of fleeing, esp. to evade arrest or prosecution"). Therefore, "[f]light instructions are proper when supported by the evidence," meaning the instructions "bear a relationship to evidence reflected in the record." *State v. Riggs*, 1999 UT App 271, ¶ 9, 987 P.2d 1281 (citation and internal quotation marks omitted), *abrogated on other grounds by State v. Levin*, 2006 UT 50, 144 P.3d 1095. "A flight instruction bears a relationship to the evidence reflected in the record if the flight occurred after [the] commission of the crime charged." *State v. Dupont*, 2002 UT App 378U, para. 9 (alteration in original) (citation and internal quotation marks omitted).

¶26 LoPrinzi argues that a flight instruction was not justified in this case because she did not flee from law enforcement.

LoPrinzi points out that the investigating officer "did not tell [her] she was under any restrictions or mandatory orders of not leaving the State" or that she was subject to arrest and, furthermore, that the same officer admitted at trial that LoPrinzi had no obligation to cooperate with law enforcement. She also asserts that the fact that an arrest warrant did not issue until six months later is further indication that she did not leave the state out of a consciousness of guilt or in an attempt to avoid arrest or prosecution. As support for her position, LoPrinzi cites several cases where a defendant fled in the course of being pursued or detained by police. *See, e.g., Franklin*, 735 P.2d at 35 (defendant escaped through a holding cell window after being questioned about murder); *State v. Bales*, 675 P.2d 573, 574 (Utah 1983) (defendant fled after being ordered to stop during police pursuit following commission of aggravated burglary); *State v. Simpson*, 236 P.2d 1077, 1079 (Utah 1951) (defendant fled when police arrived at the location where he was committing burglary). These cases, however, do not mandate a conclusion that a flight instruction was improper in this case.

¶27 Evidence of flight may still be probative even if it does not occur immediately after a criminal offense is committed or the police begin an investigation. Indeed, in *State v. Franklin*, 735 P.2d 34 (Utah 1987), the defendant's flight did not follow his commission of two murders but rather occurred while the defendant was being held in Kentucky on other charges. *Id.* at 35. When the Kentucky detectives had asked the defendant about the murders in Utah, he became emotional. *Id.* During a subsequent break in questioning, the defendant escaped through a window. *Id.* The defendant was eventually tried in Utah for murder, and the State presented evidence of the defendant's flight from Kentucky law enforcement. *Id.* at 38. On appeal, the defendant asserted that the flight evidence was inadmissible because it was not probative of his guilt of murder. *Id.* at 39. The Utah Supreme Court rejected that contention because the jury could still consider the flight to be probative of his guilt for the murders even though it followed his detention on other, later committed crimes. *Id.* The California Supreme Court,

considering the admissibility of a defendant's flight several days after committing murder, has also found such flight to be probative: "Common sense . . . suggests that a guilty person does not lose the desire to avoid apprehension for [grave] offenses . . . after only a few days." *People v. Loker*, 188 P.3d 580, 595 (Cal. 2008) (first omission in original) (citation and internal quotation marks omitted).

¶28   Thus, a flight instruction is appropriate if the circumstances could support a reasonable inference that the defendant is fleeing out of a consciousness of guilt. In this case, LoPrinzi's ex-husband testified that by July 24 or July 25, two weeks after she initially spoke with the investigating officer, LoPrinzi was gone from her home. He described the home as having "been ransacked" because "[t]hings had been dumped everywhere" and the pets, LoPrinzi's teenage son, and LoPrinzi were "gone." Furthermore, "[t]he walls . . . had been scrubbed down," and "LoPrinzi's house key was hanging on her bedroom door," indicating that she was not planning to return. Sudden, permanent departure following police questioning can be probative of a consciousness of guilt.[9] *See State v. Hunter*, 664 P.2d 195, 198 (Ariz. 1983) (in banc) ("If the manner of leaving the scene suggests consciousness of guilt then a flight instruction is

---

9. Certainly, LoPrinzi's departure could have other innocent explanations as well. And Utah law requires juries to be advised of that possibility: "[I]t is not error to give [a flight instruction] so long as it instructs the jury that there might be reasons for flight that are fully consistent with innocence of the crime charged and that even if consciousness of guilt is inferred from flight, it does not necessarily reflect actual guilt." *State v. Franklin*, 735 P.2d 34, 39 (Utah 1987). The instruction in this case informed the jury of the possibility of innocent explanations for LoPrinzi's departure, and LoPrinzi has made no challenge to the wording of the instruction. She simply contends that the instruction should not have been given, however correctly it stated the law.

proper."); *People v. Bonilla*, 160 P.3d 84, 89 (Cal. 2007) (explaining that a flight instruction is proper where the circumstances indicate that the person fled to avoid arrest). LoPrinzi's arguments against the instruction may have some basis in the facts, but they go to the weight of the evidence and do not establish that the evidence is incapable of supporting a reasonable inference that LoPrinzi fled the state out of a consciousness of guilt arising from commission of the charged offenses. Accordingly, we conclude that the trial court did not err when it gave the jury the flight instruction.

### III. Motion for New Trial

¶29 Finally, LoPrinzi contends that the trial court erred in denying her motion for new trial. LoPrinzi's motion asserted that the verdicts were internally inconsistent because the evidence did not justify the jury's decision to convict on Counts 1 and 3 but acquit on Count 2. According to LoPrinzi, all three counts "involved the same witnesses, same parties, same allegations, and same evidence." Therefore, "the jury would have [to] either convict on all Counts, or acquit on all Counts."

¶30 When considering a defendant's argument that the verdicts are inconsistent, "we review the evidence in the light most favorable to the verdict and will not overturn a jury's verdict of criminal conviction unless reasonable minds could not rationally have arrived at the verdict of guilty beyond a reasonable doubt based on the law and on the evidence presented." *State v. Hancock*, 874 P.2d 132, 134 (Utah Ct. App. 1994) (citation and internal quotation marks omitted). This is because

> "where truly inconsistent verdicts have been reached, 'the most that can be said . . . is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were

> not convinced of the defendant's guilt.' *The rule that the defendant may not upset such a verdict embodies a prudent acknowledgement of a number of factors*. First, as the above quote suggests, inconsistent verdicts . . . should not necessarily be interpreted as a windfall to the Government at the defendant's expense. It is equally possible that the jury, convinced of guilt, properly reached its conclusion . . . and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the [other] offense."

*State v. Sjoberg*, 2005 UT App 81U, para. 2 (omissions and alteration in original) (quoting *United States v. Powell*, 469 U.S. 57, 64–65 (1984) (quoting *Dunn v. United States*, 284 U.S. 390, 393 (1932))). Therefore, so "'long as sufficient evidence supports each of the guilty verdicts, state courts generally have upheld'" the convictions. *See id.* (quoting *People v. Frye*, 898 P.2d 559, 570 (Colo. 1995)). In other words, a "claim of inconsistency alone is not sufficient to overturn [the] conviction"; rather, "[t]here must be additional error beyond a showing of inconsistency because appellate courts 'have always resisted inquiring into the jury's thought processes and deliberations.'" *Hancock*, 874 P.2d at 134 (quoting *State v. Stewart*, 729 P.2d 610, 614 (Utah 1986) (per curiam)).

¶31    We applied this standard in *State v. Sjoberg*, 2005 UT App 81U.[10] There, the jury convicted the defendant of one count of

---

10. *State v. Sjoberg*, 2005 UT App 81U, was unpublished. At the time it was issued, unpublished decisions carried much diminished weight as precedent because they were often more cursory in their presentation of the facts and analysis of the issues. But the treatment of memorandum decisions has changed in the meantime to accord them precedential value. And we consider *Sjoberg* itself to be sufficiently well reasoned and

(continued...)

sexual abuse of a minor and acquitted him of the second, even though the evidence consisted of the minor's testimony that the defendant committed two separate acts of sexual abuse. *Id.* para. 4. The defendant appealed, arguing the same basis for reversal that LoPrinzi asserts in this appeal: the jury either had to believe the minor and convict of all charges or disbelieve the minor and acquit of all charges. *Id.* para. 2. In rejecting that argument, we explained, "[W]e are under no duty to reconcile the acquittal of count II with the conviction for count I. . . . [I]t would make no difference to our review if the evidence as to both counts was precisely the same" because "[c]learly, the jury determined, for its own presumably valid reasons, that the evidence only supported one conviction . . . and the evidence supports that conviction." *Id.* para. 4.

¶32 Like the jury in *Sjoberg*, "the jury [in this case] determined, for its own presumably valid reasons, that the evidence only supported [two] conviction[s]." *See id.* LoPrinzi's only remedy then is to "take refuge in challenging the sufficiency of the evidence that supports the conviction[s]." *See id.* para. 3. We conclude that there was sufficient evidence of unlawful sexual activity with the complaining witness to support both convictions. *See State v. Honie*, 2002 UT 4, ¶ 44, 57 P.3d 977 (explaining that there is sufficient evidence to support a verdict if "competent evidence was admitted to satisfy each element of the charge" and that evidence enabled "the jury . . . to find, beyond a reasonable doubt, that the defendant committed the crime").

---

articulate in expressing the state of the law in this area to warrant our reliance in this case. *See generally Grand County v. Rogers*, 2002 UT 25, ¶ 16, 44 P.3d 734 (noting that memorandum decisions, even when unpublished, constitute "the law of this state, unless and until contravened," and "may be cited to the degree that they are useful, authoritatively and persuasively").

¶33 The complaining witness testified that he and LoPrinzi engaged in both oral and vaginal intercourse on three separate occasions. LoPrinzi's ex-husband and Friend presented corroborating evidence for two of those occasions. And although LoPrinzi offered an alternative account of the events, it is within the province of the trier of fact to assess credibility and weigh the evidence as a whole. *See Stewart*, 729 P.2d at 612. Because there is a basis in the evidence for the jury's verdicts on Counts 1 and 3, we will not disturb them. *See Hancock*, 874 P.2d at 134; *see also Sjoberg*, 2005 UT App 81U, para. 4.

CONCLUSION

¶34 We affirm the trial court's decision that there was no prosecutorial misconduct in receiving LoPrinzi's mental health record to warrant disqualification of the Salt Lake County District Attorney's Office or dismissal of the case. The court also acted within its discretion when it denied LoPrinzi's request for a jury instruction on sexual battery because there was no rational basis in the record for convicting on the lesser offense as opposed to the higher offense of unlawful sexual activity with a minor. The court properly instructed the jury on flight because the record evidence supported such an instruction. Finally, the court did not err in denying LoPrinzi's request for a new trial because there is sufficient evidence to uphold the two convictions. Accordingly, we affirm.

————————

VOROS, Judge (concurring):

¶35 I concur in the judgment of the court and in the lead opinion except as to the discussion of consent in paragraphs 20 through 22, which in my view is unnecessary to the holding of the court. In addition, I write separately (1) to explain why I think judges should not give flight instructions and (2) to

comment on the new standard of review applicable to lesser-included-offense challenges.

1

¶36    Facts adduced at trial often support competing inferences. We generally leave the role of urging the jury to draw one inference or another to counsel in closing argument. I see no reason why evidence of flight presents a special case requiring judicial instruction. Pointing out to the jury that a perpetrator might flee a crime scene for reasons consistent with guilt falls within the prosecutor's job description; pointing out that a bystander might flee a crime scene for reasons consistent with innocence falls within defense counsel's job description; opting for one inference or the other falls within the jury's job description. I see no necessary role for the judge in this process.

¶37    Consistent with this reasoning, a sizeable minority of jurisdictions hold that "because the significance of flight should be left to argument, . . . instructions on the significance of flight should not be given." *State v. Stilling*, 590 P.2d 1223, 1230 (Or. 1979); *see also Dill v. State*, 741 N.E.2d 1230, 1232 (Ind. 2001) (holding that, although flight may be considered by a jury in determining a defendant's guilt, and evidence of flight may be a proper subject for counsel's closing argument, "it does not follow that a trial court should give a discrete instruction highlighting such evidence"); *State v. Hall*, 1999 MT 297, ¶¶ 46–47, 991 P.2d 929 (rejecting claim of error in giving flight instruction but observing that "the better policy in future cases where evidence of flight has been properly admitted is to reserve comment to counsel, rather than the court"); *id.* ¶ 45 (collecting cases).

¶38    While this court lacks the authority to make this change—at least in a case in which a flight instruction was given—I urge our supreme court to do so in the appropriate case.

¶39    I agree with the majority that, under our supreme court's recent opinion in *State v. Berriel* we must review trial court rulings rejecting lesser-included-offense instructions for an abuse of discretion. 2013 UT 19, 299 P.3d 1133. I am writing merely to comment on the change I believe *Berriel* has made in the law of lesser included offenses.

¶40    At trial, a defendant is entitled to a jury instruction on a lesser included offense only when (1) the elements of the charged offense and the lesser offense overlap and (2) the record as a whole provides a rational basis to acquit the defendant of the charged offense and to convict the defendant of the lesser offense. *State v. Baker*, 671 P.2d 152, 158–59 (Utah 1983). "In determining whether the evidence supports a lesser included offense instruction, a trial court does not weigh the evidence" but "views the evidence in the light most favorable to the defendant requesting the instruction." *State v. Powell*, 2007 UT 9, ¶ 27, 154 P.3d 788. A defendant's version of the evidence need not be the only reasonable interpretation of the evidence, *State v. Shumway*, 2002 UT 124, ¶ 13, 63 P.3d 94, so long as "a jury could choose to believe [the d]efendant's version," *State v. Spillers*, 2007 UT 13, ¶ 20, 152 P.3d 315. This light-most-favorable standard "establishes a procedural safeguard that protects the defendant's right to the presumption of innocence, maintains the state's burden of proving the defendant's guilt, and reserves the responsibility of evaluating the weight and credibility of the evidence for the jury." *Powell*, 2007 UT 9, ¶ 27.

¶41    On appeal, under the traditional standard of review, "[w]hether a jury instruction on a lesser included offense is appropriate presents a question of law," the trial court's resolution of which we review for correctness. *Spillers*, 2007 UT 13, ¶ 10 (citing *State v. Hamilton*, 827 P.2d 232, 238 (Utah 1992)). And "[w]hen considering whether a defendant is entitled to a lesser included offense jury instruction, we 'view the evidence and the inferences that can be drawn from it in the light most

favorable to the defense.'" *Id.* (quoting *State v. Crick*, 675 P.2d 527, 539 (Utah 1983)).

¶42 *Berriel* alters this regime. It states, "The issue of whether the record evidence, viewed in its totality, supports the defendant's theory of the case is primarily a factual question." 2013 UT 19, ¶ 9. And because "trial courts are better factfinders than appellate courts," their "[f]actual determinations" are entitled to deference on appeal. *Id.* Accordingly, the trial court's refusal to issue a lesser-included-offense instruction is reviewable only for abuse of discretion. *Id.* ¶ 11.

¶43 As *Berriel* itself recognizes, its "abuse-of-discretion standard" is less favorable to defendants than the traditional "correctness standard." *Id.* Under the traditional standard we reviewed rulings of this type for correctness, viewing the facts and inferences on appeal in the light most favorable to the defense. *Spillers*, 2007 UT 13, ¶ 10. Under that standard, to reverse the denial of a lesser-included-offense instruction we needed to conclude only that a reasonable person could find the defendant's version of events plausible. In contrast, under the new standard, we review the denial for abuse of discretion. *Berriel*, 2013 UT 19, ¶ 11. A trial court abuses its discretion "only if 'no reasonable [person] would take the view adopted by the trial court.'" *State v. Maestas*, 2012 UT 46, ¶ 36, 299 P.3d 892 (alteration in original) (citation omitted). Consequently, under the new standard, to reverse a denial of the instruction we must conclude, under the facts as found by the trial court, that all reasonable people would find the defendant's version of events plausible.[11]

---

11. Or, more precisely, that no reasonable person could conclude that the record as a whole does not provide a rational basis to acquit the defendant of the charged offense and to convict the defendant of the lesser offense.

¶44    This shift carries several potential consequences. First, the new standard makes reversing the denial of a lesser-included-offense instruction far more difficult. Consequently, such denials are likely to become more common. Furthermore, *Berriel*'s characterization of trial courts as "factfinders," 2013 UT 19, ¶ 9, casts doubt on the traditional rule that when considering a lesser-included-offense instruction "a trial court does not weigh the evidence," but "views the evidence in the light most favorable to the defendant requesting the instruction." *Powell*, 2007 UT 9, ¶ 27. As noted above, the traditional rule has been seen as protective of a number of important trial values. *Id.*

¶45    My point is not that the step taken in *Berriel* should not have been taken—that is a question for a higher court. I am simply noting the significance of the step and that future cases may need to sort out its ramifications. In any event, *Berriel* controls, and the lead opinion here correctly applies it.

_____